(76 South. 199)

No. 21997.

BARBER v. LOUISIANA RY. & NAV. CO.

(June 11, 1917. Rehearing Denied June 30, 1917.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⬅—110—ACTION FOR INJURY—NEGLIGENCE—RAILROAD.

A railroad company is not guilty of negligence in using a "stub pilot" instead of a "long-nose pilot"; both kinds being used on standard railroads.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 214, 214½.]

2. MASTER AND SERVANT ⬅—137(2)—NEGLIGENCE—RAILROAD'S USE OF LIGHT LOCOMOTIVE.

A railroad company is not guilty of negligence in using a light locomotive, sufficient, however, to pull its passenger train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 274, 277, 278.]

3. MASTER AND SERVANT ⬅—137(2)—MACHINERY AND APPLIANCES—LOCOMOTIVE.

The proper size of a locomotive is determined by the tonnage to be pulled, and not by its ability to knock animals off of the track, without leaving the rails.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 274, 277, 278.]

4. CONSTITUTIONAL LAW ⬅—45—VALIDITY OF STATUTE—PLEADING.

The constitutionality of a law will not be considered unless specially pleaded.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42.]

5. MASTER AND SERVANT ⬅—270(9) — INJURY TO SERVANT—SIMILAR OCCURRENCE.

It was error to admit in evidence before the jury the record of another suit brought by another plaintiff against the same defendant to recover damages for a similar accident at a different time and place.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 919.]

6. MASTER AND SERVANT ⬅—113(1)—RIGHT OF WAY—OBSTRUCTIONS.

A railroad company should not allow to remain upon its right of way any obstructions not necessary to the exercise of its franchise, such as weeds, bushes, hedges, trees, and the like.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 213, 224.]

*(Additional Syllabus by Editorial Staff.)*

7. DEATH ⬅—99(1) — EXCESSIVE DAMAGES — PAIN AND ANGUISH.

A verdict for $15,000 awarded the widow and tutrix of minor children of a locomotive engineer for his death from a derailment, including $5,000 for his physical pain and mental anguish and for awe of impending death, would be reduced as to that item $2,000.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125, 126.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Mrs. Mabel C. Barber, individually and as tutrix of her minor children, against the Louisiana Railway & Navigation Company. Judgment for plaintiff for $15,000, and defendant appeals. Judgment amended by reducing it to $12,000, and as amended affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant. Blanchard & Smith and James G. Palmer, all of Shreveport, for appellee.

SOMMERVILLE, J. Walter J. Barber, plaintiff's husband, a locomotive engineer on one of defendant's trains going south from Shreveport to New Orleans, was mortally injured about 2 a. m. on September 17, 1914, at or near a private crossing in a lane in the parish of Avoyelles by the derailment of the train, caused by the locomotive striking and running over a mule.

Barber survived about 20 hours, dying in a sanitarium in Shreveport.

His widow, in behalf of herself and two minor children, one a boy 16 years of age and the other a girl 13 years old at the time of their father's death, sued the defendant

company for $30,000 damages for his sufferings and death.

The grounds of alleged negligence on the part of the defendant company may be briefly stated as follows:

(1) The locomotive pulling the train was too light for the service required of it.

(2) That the said locomotive was equipped with a stub pilot instead of the safer long-nose pilot.

(3) That the right of way was obstructed by weeds, bushes, and trees so high as to prevent the engineer and fireman from seeing the animal in time to avert the collision.

Defendant, answering, admitted the alleged employment, accident, and death, but specially denied all negligence on its part, and specially pleaded that the accident was unavoidable, and happened through the risk of the employment and service, which under the law are assumed by the engineer, or was caused by the negligence of the engineer or fireman, his fellow servant, in not keeping a proper lookout, and through no fault of the defendant.

Defendant, further answering, pleaded in the alternative contributory negligence of the engineer and fireman, his fellow employé, in not keeping a proper lookout.

After a lengthy trial a verdict was rendered in favor of the plaintiff for $15,000, itemized as follows:

(1) For physical pain and mental anguish suffered by the deceased, $5,000.

(2) For grief and sorrow and mental anguish suffered by plaintiffs by reason of the death of deceased, $2,500.

(3) For the loss by plaintiffs of the love and companionship of the deceased, $2,500.

(4) For the loss of support and maintenance, $5,000.

Defendant has appealed from the judgment.

Counsel for the defendant call our attention to two bills of exceptions taken by them to the rulings of the district judge during the progress of the trial.

[5] Plaintiff offered a witness to prove that the engine in question was the same engine on which Frank Wright, engineer, was killed some time before the accident complained of in this case, to which counsel for the defendant objected on the ground of irrelevancy and the injection into this case of other and different matters calculated to prejudice the jury against the defendant.

The bill further recites that Wright's widow did not bring any suit against the defendant; but the fireman, Moses Samuels, did bring a suit, which was still pending in the district court for the parish of Caddo, and, the witness having stated that some of the information he got in relation to said matters was from said fireman, counsel for plaintiff introduced the petition and answer in the said suit, which was objected to by the defendant on the same grounds, all of which objections were overruled for the following reasons:

"Per curiam. Not having the stenographer's notes of evidence before me, cannot say whether facts are correctly stated. Whatever evidence was let in was on the theory of notice to defendant that bushes on the right of way were dangerous."

In the petition in the Samuels' suit it was alleged that the engineer ran over a cow and the engine was derailed in the parish of Natchitoches on July 12, 1913, and as a consequence that the said Samuels was badly scalded and burned.

The said petition charged that the pilot was worn, dangerous, and unsafe, that the track was not fenced where the collision occurred, and that the right of way was grown up in bushes and underbrush, behind which the said cow was concealed, not more than seven or eight feet from the track of said company.

It does not appear that the trial judge charged the jury that the evidence was ad-

mitted for the restricted purpose set forth in his per curiam. And we think that no evidence was necessary to inform defendant's foreman and officers that animals straying on defendant's right of way might hide in the bushes thereon, and thence come suddenly on the track immediately in front of some passing locomotive.

It goes without saying that the allegations of negligence in the petition of Samuels, denied under oath, as they were, in the answer of the defendant, constituted no evidence whatever of the truth of such allegations against the defendant.

Such allegations were res inter alios acta as to the present controversy, and should have been excluded, as calculated to mislead the untrained mind of the average juror.

The second bill of exceptions was taken to the charge of the judge to the jury:

"That the doctrine of the assumption of risk and defense of fellow servants' negligence has been abrogated under the laws of Louisiana and could not be considered as a defense" ·

—referring to Act 187 of 1912, p. 333, reading in part as follows:　·

"That assumption of risks by an employé, or the negligence of a fellow servant shall not be a defense to an action for damages for personal injury, but may be considered by the court in determining the measure of damages: Provided, that the provisions of this act shall apply only to public service corporations."

[4] Counsel for the defense objected to the charge on the ground that said act was unconstitutional, which objection was properly overruled for the reason that the defendant had made no attack on the act in its proceedings. State v. St. Romes, 26 La. Ann. 753.

[3] We have carefully perused the evidence in this case, and find no evidence of moment to sustain the charge that the locomotive was unsafe, because too light. The size of a locomotive is regulated by the tonnage to be hauled, and not by the capacity to knock animals off the track.

[1, 2] As to the second charge, we find a difference of opinion among railroad men as to the comparative safety of a "stub pilot" and a "long-nose pilot"; but the evidence is clear to the effect that the former is now used on most of the standard roads, and is gradually supplanting the latter.

An assistant superintendent of the Baldwin Locomotive Works testified that 75 per cent. of the pilots on engines in use are "stub pilots," and that they are as safe or safer than the long-nosed ones. The defendant uses both kinds. ·

This ground of negligence is not sustained by the preponderance of the evidence.

The third and last ground is, in substance, that the mule was hidden and secreted by the weeds, bushes, and trees on said right of way, and that it suddenly emerged therefrom, and entered upon the track just in front of the engine operated by Barber, and "upon striking said mule at full speed the said engine turned over," and as a result thereof "thereby badly scalding Barber and causing his death."

The accident happened at about 2 o'clock a. m. We do not know what Barber saw. He said to the conductor, "John, I struck a mule," and nothing more.

William Anderson, the colored fireman, testified that when the locomotive struck the mule he had just finished shoveling coal into the furnace; that the first intimation he had of the accident was "the engine jumping on the ties"; that Barber blew no whistle for the crossing; and that there was nothing to keep Barber from seeing the mule in the lane, which crossed the track at right angles, if he had been looking. Yet he testified that up to the time he began to shovel coal, which was about 200 or 300 yards from the place of the accident, he was on the watch, and that he had a clear view of the locality, and that no mule was then in sight. If this witness for the defendant, who had been on the lookout, while seated at his proper place in the

cab, failed to see the mule, then the deceased engineer was not able either to see it, if it was on the roadway, from his seat in the cab. It is quite clear from all of the evidence in the record that the deceased engineer did not see the mule on the track in time to stop or slacken the train and to avoid the accident which resulted in his death.

The only question for discussion is whether the engineer should have seen the mule on the track in time to have avoided the accident, or to have lessened his injuries, or whether the accident was entirely unavoidable, and defendant not responsible therefor.

Plaintiff alleges that the defendant company permitted its right of way, and particularly that portion where the wreck occurred, to be grown up in weeds, bushes, and trees of such height and density as to cover and conceal an animal that might wander thereon, and to obstruct it from the view of the engineer and fireman running an engine along the track, and that on the night the deceased received the injuries which resulted in his death a mule suddenly emerged from these weeds, bushes, and trees, which extended up the railroad track for some distance; that the view of the mule was obstructed from the deceased and the fireman on account of the weeds, bushes, and trees until it was too late for the deceased to use any precaution to avoid the collision; that the mule ran on the track in front of the fast-moving engine, causing the wreck and the injury in question, all through the fault and the neglect of the defendant.

Both plaintiff and defendant offered witnesses to prove the condition of the roadway as to weeds, bushes, and trees at and near the road crossing where the accident occurred. The preponderance of the evidence is in favor of the plaintiff to the effect that the bushes and trees were thick, and had grown from 2 to 14 feet in height. Witnesses for the defendant testified that the bushes and willows were from 8 to 10 feet in height, and of sufficient thickness to hide an animal said to be 3½ feet high.

Both sides on their briefs admit that the mule was in the lane which crossed the track at right angles, and seemed to have come from that end of the lane which was on the left-hand side of the locomotive; so that the engineer might not have seen the animal as quickly as the fireman might have if the latter had not been engaged in shoveling coal at the moment.

It is argued on behalf of the defendant that the roadbed is elevated, and, the trees being in barrow pits, that the engineer, seated in the cab, had a clear view of the roadway and track regardless of the trees.

The roadmaster of the defendant, testifying on its behalf, said that the right of way had not been cut for at least a year, and that the willows and bushes were from 8 to 10 feet high. The trainmaster and supervisor of defendant company also testified that the willows were about 10 feet high.

Competent evidence in the record shows that the trees were on the roadbed, and so close to the moving train that they came in contact with the cars as they passed by. The evidence is quite conclusive to the effect that, while there were no obstructions growing at the immediate intersection of the railroad and the dirt road, that obstructions were growing at the place of the accident, near the intersection, and that they were of such a nature as to prevent the engineer from having a clear view of the roadway and track at night, with the aid of the headlight, and from seeing a stray animal going through the lane and entering upon the track at a sufficient distance ahead to avert a collision.

Defendant's witnesses testified that the deceased was a competent and capable engineer, and that he was considered conscientious and careful. Evidence shows that he did not sound any alarm before the wreck occurred, which evidences the fact that he did not see the animal in time to give an alarm. Tes-

timony in the record is that he was at his post of duty, and it follows that a condition existed which kept him from seeing the animal until the train was in the act of striking it, and that he could not take any precautionary measures to avert the accident.

[6] A railroad company owes to the members of its train crew, and to the traveling public generally, the duty of keeping its right of way clear from unnecessary obstructions, to the extent that, should such obstructions become the proximate cause of an injury to either employé or passenger, the company is responsible for such damages as are sustained.

In the case of Ortolano v. Morgan's Louisiana & Texas Railroad & Steamship Co., 109 La. 909, 33 South. 914, where the defendant had placed a gate which obstructed the view of the engineer, and a young child was injured because of said obstruction, the court say:

"The existence of that condition of things might exonerate the engineer personally for not seeing the child, but it could not be set up as a defense by the defendant company. It had no right to place obstructions on or near its line in a manner to intercept the view of the engineer, and to leave a part of its track without a lookout and unguarded. If physical conditions should be such as to unavoidably bring about a condition of that character, the company should be called upon by every means and instrumentality in its power to minimize the danger. * * * If the gate referred to in the testimony was an obstruction to the view, the defendant, having erected it, and having control over it, should have removed it entirely, or to another place."

The duty is imposed upon a railroad to provide for the safety of its employés, as well as of its passengers, so far as that is practicable by the exercise of human care and foresight. It is bound to see that the road is in good order; that the engines are properly constructed and furnished; that the cars are strong and fitted for the accommodation of passengers; that the running gear is, so far as the closest scrutiny can detect, perfect in its character; and that there are no obstructions on or near the track which pre-

vent the engineer on duty from seeing persons or animals, who may suddenly enter upon the track, and cause derailment of the cars, or other accident. They may not suffer animals to endanger the life of passengers and crew any more than a defective rail or axle.

In the case of Donnegan v. Erhardt, 119 N. Y. 468, 23 N. E. 1051, 7 L. R. A. 527, the New York Court of Appeals say:

"Experience shows that animals may stray upon a railroad track, and that, if they do, * * * a train may come in collision with them, and be wrecked; and adequate measures, reasonable in their nature, must be taken to guard against such danger."

In the case of Fordyce v. Jackson, 56 Ark. 594, 20 S. W. 528, 597, the court of Arkansas say:

"If the fireman had kept a lookout, the presumption is he would have discovered the animal in time to avert the accident, unless prevented by trees and bushes which some of the witnesses say grew near the track at that point. But, if prevented by that cause, it would have offered no excuse for the company, as before stated."

Thompson on Negligence, vol. 2, par. 1607, states the rule substantially as follows:

"A railroad company should not allow to remain upon its right of way any obstructions not necessary to the exercise of its franchise, such as weeds, bushes, hedges, trees, and the like."

There was no evidence offered in support of the plea of contributory negligence.

[7] The deceased was a man in good health, 39 years of age, with a life expectancy of nearly 29 years. He was earning $150 per month. He was scalded by the escaping steam from the overturned locomotive, and he lived for 20 hours, in much agony, although he was under the influence of narcotics for a part of the time. He left a widow and two children, who are claiming damages for his suffering and death. The jury allowed plaintiff $5,000 "for physical pain, mental anguish and for the awe of impending death suffered and experienced by the deceased." The pain and injury suffered by the deceas-

ed must have been extreme, although tempered perhaps by narcotics, but, in our opinion, the award of $5,000 is too high. It should be reduced to $2,000. The other items specified by the jury will not be disturbed, as there is no manifest error in connection therewith.

Defendant argued that the $2,500 allowed by the jury "for grief, sorrow, and mental anguish suffered by plaintiffs" and the $2,500 allowed "for the loss of the companionship of their husband and father" were for one and the same thing. But the companionship of a husband and father cannot be correctly said to be the same as the "grief, sorrow, and mental anguish" suffered by the widow and children of a husband and father.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the judgment for $15,-000 to $12,000, and as thus amended it is affirmed, with costs of appeal to be paid by the appellee.