(78 South. 568)

No. 22472.

## JONES v. KANSAS CITY SOUTHERN RY. CO.

(Jan. 28, 1918. On Rehearing, April 29, 1918.)

*(Syllabus by Editorial Staff.)*

1. NEW TRIAL ☞172—VERDICT—AMOUNT.

Although the jury on a second trial, ordered mainly to permit defendant to show contributory negligence, was not bound by the verdict found in the previous trial, it could not increase amount of recovery on the ground that defendant, alleging contributory negligence on the part of a deceased employé, failed to produce any evidence thereof, which inferentially it pretended to be able to produce when it strenuously complained of the ruling under which such testimony was excluded.

2. APPEAL AND ERROR ☞1175(2)—TERMINATION OF ISSUES—INSTRUCTIONS.

In civil cases the Supreme Court will apply the law which is pertinent to the facts and proceed to a proper and final decision of all the issues regardless of the instructions given to the jury.

On Rehearing.

*(Syllabus by the Court.)*

3. COURTS ☞97(5)—DEATH ☞95(3)—FEDERAL EMPLOYERS' LIABILITY ACT—AMOUNT OF RECOVERY.

The state courts are obliged, by rulings of the Supreme Court of the United States, to fix the amount of compensation, if compensation be due to the beneficiaries of a deceased employé, under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]), at the present or cash value of what the employé might reasonably have contributed to the support of the beneficiaries during the term of his life expectancy, according to the evidence. The right of recovery being limited to the pecuniary loss, that loss is to be determined or computed by discounting the lost future benefits, at a fair or reasonable rate at which the money might be loaned or invested safely at interest, for each year of the life expectancy.

4. DEATH ☞95(3)—FEDERAL EMPLOYERS' LIABILITY ACT—DAMAGES—LIFE EXPECTANCY.

In determining the life expectancy of a locomotive engineer, according to the expectation table constructed from the American Experience Table of Mortality, the court adopts the rule of the insurance companies of adding eight years to the age of the man because of his hazardous occupation.

5. DEATH ☞95(3)—FEDERAL EMPLOYERS' LIABILITY ACT—VALUE OF FUTURE BENEFITS—COMPUTATION.

The formula adopted in this case for computing the present value of future benefits lost by the beneficiaries of a deceased employé in awarding compensation under the federal Employers' Liability Act is as follows, viz.: Subtract from the annual wages the employé was earning the annual cost of his maintenance, according to the evidence, and multiply the remainder by the number of years of his life expectancy. The result discounted at the legal rate of 5 per cent. for the term of the life expectancy, using annual periods or rests, is the loss of future benefits reduced to present value.

*(Additional Syllabus by Editorial Staff.)*

6. DEATH ☞105 — VERDICT — APPORTIONING DAMAGES.

The jury is not required by the federal Employers' Liability Act to apportion the award of damages among the beneficiaries of the deceased employé.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Mrs. Nora M. Jones, administratrix of estate of Thos. A. Jones, against the Kansas City Southern Railway Company. Judgment for plaintiff, and defendant appeals. Judgment reduced, and as amended affirmed.

S. W. Moore, of Kansas City, Mo., and Alexander & Wilkinson, of Shreveport, for appellant. Otis W. Bullock and Blanchard & Smith, all of Shreveport, for appellee.

LECHE, J. Plaintiff in this suit prays for the recovery of damages in the sum of $30,000 for the benefit of herself as widow, and for the benefit of her minor children, alleged to have been suffered on account of the death of Thomas A. Jones, her late husband and father of her said children.

She charges that her said husband, who was a locomotive engineer in the employ of defendant company, was killed while so em-

ployed in a collision and wreck on defendant's railroad near the city of Shreveport, said collision and wreck being caused by the gross negligence and carelessness of the said defendant and its employés. The defendant being an interstate commerce carrier, plaintiff based her cause of action on the act of Congress which regulates the liability of employers for personal injuries to their employés. Defendant, after unsuccessfully attempting to remove the case to the United States District Court, answered plaintiff's demand, and was after due trial condemned to pay plaintiff the sum of $17,500. That judgment was appealed to this court, and was affirmed. See 137 La. 178, 68 South. 401.

The case was then brought by writ of error to the United States Supreme Court, and that tribunal reversed our decree on the ground that we had committed error in ruling that evidence of contributory negligence rejected by the trial court for a wrong reason was nevertheless properly excluded, because it was not offered for the specific purpose of mitigating damages, there being no local rule requiring counsel, without inquiry from the court, to announce in advance the purpose for which evidence is tendered. The cause was then remanded to the trial court, in order to afford defendant an opportunity to show, if it could, that deceased had contributed to his death by his own negligence.

Pursuant to the decree of the United States Supreme Court, the case was again tried in the district court for the parish of Caddo, and a verdict was then rendered in favor of plaintiff in the sum of $26,500, and the present appeal is from a judgment based upon that verdict.

## Opinion.

Defendant alleges error on the part of the trial judge in his instructions to the jury. It complains of the failure of the jury to apply the law as charged by the judge, and it also complains of the conclusions of fact reached by this court in its former opinion.

[1] On the last trial, which was ordered mainly for the purpose of permitting it to show contributory negligence on the part of Jones, the deceased, defendant signally failed to establish such contributory negligence. It may be the failure on its part to offer any testimony to that effect which inferentially it pretended to be able to produce, when it so strenuously complained of the ruling under which such testimony was declared inadmissible, that induced the jury to increase the original award of damages from $17,500 to $26,500. While the jury in the last trial was in no manner bound by the verdict found in the previous trial, yet, if we are correct in our surmise as to the cause which brought about the substantial increase in the amount awarded, such increase can certainly not be justified on any such ground. That would be penalizing a litigant for availing himself of a defense to which the United States Supreme Court has declared him legally entitled.

[2] We understand defendant's complaint in regard to the instructions given to the jury by the trial judge is not made with a view of having the case remanded. It is now well settled that in civil cases the court will apply the law which is pertinent to the facts, and proceed to a proper and final decision of all the issues, regardless of the instructions which may have been given by the trial judge to the jury, but this complaint is made in order to substantiate the charge of serious error on the part of the jury in its appreciation of the evidence and in awarding plaintiff such a large amount of damages.

The questions of fact at issue herein were thoroughly investigated by this court on

the previous appeal, and a reconsideration thereof as they are presented in the original record, as well as in the present one, has only served to confirm us in the conclusions which we then reached. Defendant contends that we erred when we characterized the movement of the loaded box car which came in collision with the passenger train and caused the death of Jones as resulting from a flying switch. Technically speaking, that was error, but in actual effect it is even more dangerous, and therefore it was greater negligence on the part of defendant to have permitted the loaded box car to be put in motion by gravitation on a descending grade, called in railroad parlance "high lining," than to have imparted that motion on a level track, by means of a locomotive, in order to make a "flying switch."

We are firmly of the opinion that the collision which caused the death of Jones was the result of gross negligence on the part of defendant, and that plaintiff is entitled to recover compensation. The amount of that compensation, due regard being had to the purposes of the law, cannot be fixed with any mathematical certainty, and it is left more or less to the discretion of the courts.

We are most earnestly asked to establish some fixed rule by which it might be gauged, but that function being more properly legislative than judicial, we are unwilling to assume it, however desirable and beneficial such a rule might be.

The original award of $17,500 made by the jury on the first trial was approved by this court as fair and just, and we see no good reason either to increase or diminish it, and so believing and for the reasons stated.

It is ordered that the amount of the judgment appealed from be reduced from $26,500, to $17,500, and, as thus amended, that it be affirmed.

## On Rehearing.

O'NIELL, J. [3] The Supreme Court of the United States has announced, as a definite rule, that the amount of compensation to be allowed the beneficiaries of a deceased employé, if any be due them, under the federal Employers' Liability Act, is only the cash value of what the employé might reasonably have contributed to the support of the beneficiaries during the term of his life expectancy. That is because the right of recovery is limited to the pecuniary loss suffered by the beneficiaries. And that loss is to be ascertained or computed by discounting the lost future benefits, at a fair or reasonable rate at which the money could be loaned or invested safely at interest, for each year of the life expectancy, according to the evidence. Chesapeake & Ohio Railway Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; Spokane & Inland Railroad Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125.

[4] We have concluded from the evidence taken on the second trial that Jones was 56 years of age at the time of his death. The evidence shows also that the life expectancy of a locomotive engineer, because of his hazardous occupation, is taken 8 years beyond his age. Accordingly a locomotive engineer 56 years of age is rated at 64. That rule has been adopted by the life insurance experts, and there is no reason why we should not avail ourselves of their knowledge and experience. In fact, we have this strong equitable reason for considering the danger of the occupation: That it is presumed that the employé was compensated for the risk, in the wages he received, and that the beneficiaries will therefore have the compensating advantage of a higher rate of future benefits, in our calculation, than they would have if the risk had been an ordinary one.

The life expectancy of a locomotive engi-

neer aged 56 years, or of an ordinary risk at 64, according to the expectation table constructed from the American Experience Table of Mortality, and therefore according to the reliable theory of chances, is 11.7 years. That is the presumed term of the future benefits of which the beneficiaries in this case were deprived by the death of Jones.

[5] The amount of the future benefits or contributions that the beneficiaries lost is the difference between the amount that Jones would have earned and the amount he would have spent upon himself if he had lived 11.7 years longer. He was earning $2,100 a year, and, from the evidence of his good habits, we have concluded that $600 a year is a fair allowance to be made for what he would have spent for his own maintenance. Hence we fix the amount of the lost future benefits at $1,500 per annum for 11.7 years; that is, a total sum of $17,550 that would have been equally distributed or contributed in installments during a period of 11.7 years.

The rate of discount to be allowed on the anticipated payments, to reduce them to their present value, is a fair or reasonable rate at which the money could be loaned or invested safely at interest. There is evidence that that rate locally is 6 per cent.; but we think the evidence refers to loans or investments requiring some financial knowledge or ability, and therefore producing returns that are earned, not altogether by the money invested, but in part by the financial ability of the investor. A person without business ability would have to deal with a savings bank, or invest in bonds or other securities of equal standing, paying something like 4 per cent., to make a safe investment at interest. On the other hand, as money does not invest itself, or produce any revenue without investment, its earning power or value is always due, in some measure, to some financial knowledge or ability on the part of its investor. It would therefore be putting the value of the money too low to adopt the rate of 4 per cent. in discounting the payments to be anticipated in this case. Our opinion is that 5 per cent. is a more appropriate rate, and is fully warranted by the evidence. That is the legal rate of interest—the rate we are constrained to allow when none is stipulated and interest is due. It seems quite equitable that the discount charged to the beneficiaries in computing the present value of deferred payments should be at the rate at which interest would be allowed to the plaintiffs on a past-due claim of similar character.

We have concluded, therefore, to reduce the amount of the judgment in this case to the present value of 11.7 annual payments of $1,500 each, that is, the net proceeds, or what would be the present or cash value, of $17,550, payable in 11.7 yearly installments, discounted at 5 per cent. The result of our calculation is that the plaintiffs are entitled to a judgment for $13,547.64, viz.:

| Years. | Amount. | Divisor. | Discount. | Cash Value. |
|---|---|---|---|---|
| 1. | $ 1,500. | 1.05 | $ 71.43 | $ 1,428.57 |
| 2. | 1,500. | 1.10 | 136.36 | 1,363.64 |
| 3. | 1,500. | 1.15 | 195.64 | 1,304.36 |
| 4. | 1,500. | 1.20 | 250.00 | 1,250.00 |
| 5. | 1,500. | 1.25 | 300.00 | 1,200.00 |
| 6. | 1,500. | 1.30 | 346.15 | 1,153.85 |
| 7. | 1,500. | 1.35 | 388.89 | 1,111.11 |
| 8. | 1,500. | 1.40 | 428.57 | 1,071.43 |
| 9. | 1,500. | 1.45 | 465.52 | 1,034.48 |
| 10. | 1,500. | 1.50 | 500.00 | 1,000.00 |
| 11. | 1,500. | 1.55 | 532.26 | 967.74 |
| 11.7 | 1,050. | 1.585 | 387.54 | 662.46 |
| Totals | $17,550. | | $4,002.36 | $13,547.64 |

[6] The jury was not required by the federal Employers' Liability Act to apportion the award of damages among the beneficiaries of the deceased employé. Central Vermont Railway Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Chesapeake & Ohio Railway Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367.

The judgment appealed from is amended by reducing the amount to $13,547.64, and,

as amended, it is affirmed; the appellant to pay the costs of the district court; the appellees the costs of appeal.