(83 South. 535)

No. 23293.

LEWIS v. TEXAS & P. RY. CO.

(June 30, 1919. Dissenting Opinion July 3, 1919. On Rehearing, Jan. 5, 1920.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT �ején111(1) — OPERATION OF MOTORCAR WITHOUT HEADLIGHT TO SHOW OBSTRUCTION ON RAILROAD TRACK NEGLIGENCE.

Allowing a motorcar without a headlight to be operated after dark at a speed of 30 miles an hour by a young and inexperienced youth is negligence as to a workman thrown from the car in a collision with a hog on the track.

2. MASTER AND SERVANT ⟝204(1) — UNDER FEDERAL EMPLOYERS' LIABILITY ACT SERVANTS ASSUME EXTRAORDINARY RISKS OF EMPLOYMENT.

Under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), an injured employé is deemed to have assumed any extraordinary risks incident to his employment.

3. APPEAL AND ERROR ⟝835(2)—GROUND FOR REDUCTION OF DAMAGE CANNOT BE URGED FOR THE FIRST TIME ON REHEARING ON APPEAL.

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for the death of railroad laborer, where there was no plea of assumption of risk, and the defendant failed to urge assumption of risk until rehearing as a ground for reduction of damages, such contention is then unavailing.

4. MASTER AND SERVANT ⟝262(3)—ASSUMPTION OF RISK WITHIN FEDERAL EMPLOYERS' LIABILITY ACT MUST BE PLEADED.

Assumption of risk under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) is a special defense, which has to be specially pleaded.

5. DEATH ⟝95(3)—MEASURE OF DAMAGES UNDER FEDERAL EMPLOYERS' LIABILITY ACT.

Where a married man of 25, earning $2.50 a day as a railroad bridge worker at the time of his death, would have received $1 per day increase in compensation allowed to such workers before the trial, and his entire earnings were devoted to support of his wife and child, the damages recoverable under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) should be computed on an earning capacity of $3.50 a day, and at such rate judgment should be for $16,996.60.

6. DEATH ⟝82—UNDER FEDERAL EMPLOYERS' LIABILITY ACT CLAIMS FOR CONSCIOUS SUFFERING MAY BE JOINED WITH CLAIM OF WIDOW FOR COMPENSATION.

Under federal Employers' Liability Act, § 9 (U. S. Comp. St. § 8665), a claim for conscious suffering of her deceased husband may be made by the widow in the same suit in which she seeks to recover damages sustained by herself and her minor child on account of the death.

7. DEATH ⟝52—DAMAGES FOR CONSCIOUS SUFFERING OF DECEASED NOT RECOVERABLE WITHOUT PRAYER THEREFOR.

In a suit under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), brought by the widow, where she alleges that her husband suffered because of the injuries, but fails to pray judgment for damages on account of such suffering, no such damages can be awarded.

O'Niell and Provosty, JJ., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by Mrs. Bessie Savant Lewis against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Spencer, Fenner, Gidiere & Phelps, of New Orleans, and William H. Peterman, of Alexandria, for appellant.

John W. Lewis and R. Lee Garland, both of Opelousas, for appellee.

PROVOSTY, J. A bridge gang of the defendant railroad company, composed of a foreman and nine men, left Melville on a motorcar and trailer at 7 o'clock in the morning to go some 55 miles up the line to do some work. They reached their destination at 11 o'clock. They stopped work at about 3 p. m., according to the foreman, and later according to those of the men who testified in the case, and started back to Melville. They made a stop of about 10 or 15 minutes at Lamourie for water, and another at Meeker of about same length to let a train pass, and another of same duration opposite the house of the foreman, five miles further on, to let the foreman off. They had then traveled 20 miles. The foreman says it was then half past 3, but according to the several members of the gang who testified in the case it was much later. This was on the 17th of November, when the sun sets at 4:43. The foreman testifies that there was ample time for the men to reach Melville before night; but we doubt this, judging from the time they had taken in the morning to travel the 55 miles, and that doubt is confirmed by the conduct of the foreman who went and procured the rear end lamp of a Ford automobile for the men to signal with in case darkness overtook them. Shortly after leaving the foreman, they stopped to let a train go by, and they had gone barely 5 miles when

they had to stop again to mend the timer rod. This consumed about 30 minutes. By the time they were ready to proceed, darkness was setting in, so that they lit their lamp. They were then 30 miles from Melville. About a mile and a half further on, they collided with a hog, and plaintiff's husband, who was riding on the trailer, was thrown forward, and was run over, and so injured that he died within a few days. His widow and child bring this suit in damages, charging that his death was due to the negligence of defendant.

The grounds of negligence alleged are that the car was unprovided with a headlight; that the brake was out of order; that the motorman was an inexperienced stripling, weighing less than 100 pounds; that the car was being run at an imprudent speed, and was at best unsafe to ride on, consisting of a platform and two lengthwise benches, with nothing to hold on to.

We do not think that there was anything particularly the matter with this car, or with the manner of its operation, except that we think that, running at night, it should have been provided with a headlight of some kind to enable the motorman to see far enough ahead to stop in time to avoid a collision. Such a headlight as automobiles are equipped with would have answered the purpose, and ordinary prudence, we think, should have suggested the providing of same. We understand very well that such cars are not intended to be run at night, and ordinarily are not; but, if it so happens that on any occasion one of them is to be run at night, as in the present case, ordinary prudence, we think, would require that a sufficient headlight be provided. On this occasion the defendant company was taking the chances of no obstruction being encountered. This it had no right to do, risking the lives of the nine men on this car. The lamp in question was dim. It threw no reflection at all.

The evidence does not show that the hog

came so suddenly on the track that the accident would have been unavoidable with a proper headlight. Even taking the statement of the men made to defendant's agent an hour or two after the accident, upon which defendant relies so much, the "hog attempted to cross the track 25 feet ahead of the car"; and, even if the distance was less, non constat that in the daytime, or with a suitable headlight, the obstruction could not have been seen in time at least for the car to have been checked sufficiently to avoid catapulting its human load.

Plaintiff is 17 years old; her child, in whose behalf as well as in her own she sues, is 16 months old. Her husband was 25 years old, intelligent, healthy, and of good habits, devoting his earnings to his family. These were $2.50 a day; and in a short time would have been $3.50 a day. His life expectancy was 38 years. Our learned brother below, who tried the case without a jury, allowed $17,500 damages. He did not apportion this amount between the two plaintiffs, and as the plaintiffs did not appeal, and did not pray for such an apportionment in their answer to the appeal, we are unable to make any change in the judgment as between the plaintiffs. Plaintiffs think said allowance is too small, and should be increased. Defendant thinks it is too large, and should be diminished. We see no good reason for changing it.

Judgment affirmed, at defendant's cost.

O'NIELL, J., is of the opinion that, as this case is governed by the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), the amount of the judgment should be the present cash value of 38.81 annual payments of $600 each, discounted at 5 per cent., which, according to the formula adopted in Jones v. Kansas City Southern Railway, 143 La. 307, 78 South. 568, is $12,-747.46, as will be explained in a separate opinion which he will hand down. See 83 South. 537.

## On Rehearing.

SOMMERVILLE, J. [1] In support of its application for a rehearing, defendant says that the court "have exonerated the defendant from all of the charges of negligence, except the charge that the car was unprovided with a headlight." In this the defendant has erred. The lack of a headlight was, in the opinion of the court, sufficient negligence to warrant an affirmance of the judgment of the district court, and the other acts of negligence alleged and proved were not considered at length.

The record contains proof of great negligence on the part of the defendant company in the management, operating, and equipment of the motorcar used in transporting its bridge gang to and from the point of work. Defendant company required the bridge gang, of which the deceased, Lewis, was a member, to board on its boarding cars at Melville. From that point the gang, under the direction of the defendant's foreman, departed each morning for the point of work, in an open motorcar with a trailer attached. At the time of the accident, the evidence shows that the car while returning to Melville was filled with 10 or 11 workmen and a large amount of loose tools and rope; that the car was without handholds, railing, or other means of protection in case of a sudden stop or collision. This was negligence on the part of the defendant company; and, together with other acts of negligence, including the want of a proper headlight, were the proximate causes of the death of Lewis. Again, nightfall was approaching, and darkness was certain to overtake the crew before it reached Melville, and the foreman knew that to be the case; yet, on its homeward journey he left the car, and placed it in charge of an inexperienced youth, weighing

about 100 pounds, and some 17 years of age. This was another act of negligence. The car was started on its journey homeward, without any headlight whatever to show obstructions that might be on the track after nightfall. When the accident occurred the youth who had been placed in charge of the car was unable to see the track before him for more than a few feet.

Again, this car was traveling at a rate of 30 or 40 miles an hour, and at such speed as would prevent its being stopped within 150 or 200 feet; and at a place where the employés of the defendant knew that obstructions were likely to be on the track. A speed of 12 miles per hour in daylight would have been sufficient for this motor car to have made.

All of these acts of negligence, taken together, were the proximate causes of the accident to the deceased which resulted in his death.

[2-4] This action is founded on the federal Employers' Liability Act of Congress of April 22, 1908 (chapter 149, 35 Stats. 65), as amended by act of April 5, 1910 (chapter 143, 36 Stats. 291 [U. S. Comp. St. §§ 8657–8665]).

Plaintiff, as the widow of Charles Lewis, in her own behalf and on behalf of her minor child, recovered a judgment in the district court for damages because of the death of Lewis while employed by the defendant in interstate commerce. The judgment was for $17,500. On the former hearing this judgment was affirmed, and a rehearing was granted principally as to the quantum of damages to be allowed.

Defendant has argued on this hearing that the deceased assumed the risks of his employment, and that therefore his widow cannot recover damages. The federal Employers' Liability Act provides for the assumption of "extraordinary risks incident to his (employé's) employment," but the record does not disclose that Lewis assumed any extraordinary risks in boarding the motorcar, under the direction of his employers, for the purpose of being taken back to the boarding cars of the defendant company, where he was required to return each night. But defendant failed to plead assumption of risk on the part of Lewis; and, as this is a special defense, which has to be specially pleaded, it cannot be heard on the trial of the case at this time, particularly on an application for rehearing, when it was not pleaded or argued in the trial court or on the former hearing of the case in this court.

[5] Plaintiff answered the appeal, and asked for an increase in the judgment appealed from. The deceased was a young man, aged 25 years, who was engaged as a member of a bridge gang, working for the defendant railroad company at the time of the injury to him and his death. He was robust, intelligent, and ambitious, and without bad habits. He was at the time of his death earning $2.50 per day, and his wife testified that he gave all of his salary to her for the support of herself and her child. The district judge assumed, as a basis of the judgment rendered by him that the deceased contributed $600 a year for the support of his wife and family, and rendered judgment against the defendant on that basis. But the evidence shows that at the time of the trial bridge gang workers were being paid $3.50 per day, and with the industrious habits and ambition of the deceased it is fair to assume that his earnings would have been still further increased. And with this increase, contributions to his family's support would have been also increased, say to $800 per annum; and, plaintiff asks the court to take this fact into consideration in computing the amount of the judgment to be rendered against the defendant. Considering all the circumstances, particularly the character of the deceased, and the fact that his fellow employés were earning $3.50 per day at the time of the trial of the case, the re-

quest is reasonable and proper that the judgment of the court should be based upon the advanced wages which the deceased would reasonably have been earning at that time if he were alive. As the minimum contribution of the deceased to his family would be at least $800 per year; and as his life expectancy was 38.81 years, there should have been judgment for plaintiff in the sum of $16,996.60, under the rule used in the Jones Case, 143 La. 307, 78 South. 568.

[6, 7] Plaintiff asks that the judgment be increased by $5,000 for the suffering endured by the deceased during the two days that he was alive before he succumbed. But plaintiff has not demanded in her petition damages to herself and her child by reason of the sufferings of her deceased husband. This is not a suit for conscious pain and suffering of the decedent before the injury became fatal. Such claim might have been made by her under section 9 of the federal Employers' Liability Act as amended, in the same suit with a claim for damages for pecuniary loss to herself and child, under the law as construed in the cases of St. Louis Iron Mountain & Southern Railway Co. v. Craft, 237 U. S. 648, 35 Sup. Ct. 704, 59 L. Ed. 1160, and Great Northern Railway Co. v. Capital Trust Co., 242 U. S. 144, 37 Sup. Ct. 41, 61 L. Ed. 208, L. R. A. 1917F, 1050.

Plaintiff alleges that her husband suffered because of the injuries inflicted upon him, but in her prayer for judgment she asks for only $10,000 for herself and her child because of the deprivation of the pleasure and solace of her husband's companionship and of his care, etc., and the great physical pain and anguish to her, and for the further sum of $25,000 for her care and maintenance of which she and her child had been deprived by his death, and she asked for a total judgment of $35,000.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing it from $17,500 to $16,996.60, with interest, and, as amended, it is affirmed. Costs of appeal to be paid by plaintiff.

O'NIELL and PROVOSTY, JJ., dissent from the ruling increasing the contributions from $600 to $800 per annum on the mere prospect that the wages which the deceased was earning at the time of his death would have been increased, and are of the opinion that the judgment should be for $12,747.46, according to the rule laid down in the case of Jones v. Kansas City Southern Ry. Co., 143 La. 307, 78 South. 568.