**LEITZ et al. v. ROSENTHAL et al.***

No. 16194.

Court of Appeal of Louisiana.   Orleans.

March 23, 1936.

St. Clair Adams & Son and Irwin W. Rosenthal, all of New Orleans, for appellants.

H. W. & H. M. Robinson, of New Orleans, for appellees.

WESTERFIELD, Judge.

This is a suit for damages for the negligent killing of Albert Leitz, brought by his widow and two minor children against Dr. Maurice S. Rosenthal and his insurance carrier, Ætna Casualty Insurance Company.

The case was tried by a jury, which returned a verdict for plaintiffs in the sum of $15,000. The policy of the Ætna Casualty Insurance Company being limited to $10,000, a remittitur was entered by plaintiffs reducing the judgment to that amount as against the insurer. Both defendants have appealed suspensively to this court.

The accident which resulted in the death of Albert Leitz occurred on November 18, 1933, at about 11 a. m. on St. Charles Avenue between Cadiz and Valence streets, when an automobile driven by Dr. Rosenthal skidded and struck Mr. Leitz, who was standing on a step attached to the rear of his parked ice truck, causing severe injuries to his legs and pelvis which resulted in his death about 2 p. m. the following day. At the time of the accident a light rain was falling and the streets were wet and slippery.

The charges of negligence imputed to Dr. Rosenthal are excessive speed, failure to keep a proper lookout, attempting to make a sudden turn to the left on a slippery pavement, and in driving his automobile in misty weather with defective eyesight.

In their answer defendants deny that Dr. Rosenthal was guilty of any negligence and, in the alternative, pleaded contributory negligence on the part of the decedent, in that the ice truck was parked at an angle instead of parallel with the street curbing in violation of the traffic ordinance of the city of New Orleans, No. 13,702, C.C.S.

St. Charles avenue is the principal boulevard in the city of New Orleans. It is divided by a neutral ground with a roadway on each side which, at the scene of the accident, is about 24 feet wide. At the time of the accident it was subdivided by a white line, put there by the police department of the city of New Orleans, into two traffic lanes;

*Rehearing denied April 20, 1936.

the one nearest the neutral ground, which was 8 feet wide, was allocated to rapidly moving vehicles, and the other, about 16 feet wide, to slower traffic. The speed limit as established by the municipal ordinance was 30 miles per hour.

According to the testimony of Dr. Rosenthal, he was driving along the lakeside driveway in the slow zone of traffic at about 18 or 20 miles an hour, and that as he reached Cadiz street he noticed the parked ice truck about the middle of the block; that, when he reached a point about 60 feet distant, he saw that the truck was parked at an angle with the rear end about 3½ feet from the curb; that, in order to avoid striking it, he attempted to turn to the left and into the fast zone, and as he did so his car began to skid' and became unmanageable; and that, notwithstanding all of his efforts, the car continued to skid, with the result that the right side of his front bumper struck the rear of the ice truck and Mr. Leitz, who was apparently attempting to remove a piece of ice from the body of the truck.

Dr. Rosenthal had as a passenger in his car his mother, who testified in substantial corroboration of her son. Mrs. Wm. J. Engert, who lived in the St. Charles Apartments on St. Charles avenue between Cadiz and Valence streets, her apartment being on the second floor and about opposite the scene of the accident, testified that she was sitting on her front porch sewing, and that, happening to look towards Cadiz street, she saw the Ford car of Dr. Rosenthal and noticed his attempts to get into the fast zone of traffic, saw it skid and strike the ice truck, which, she states, was parked at an angle with its rear end out about 3½ feet. Her testimony in the main supports that of Dr. Rosenthal and his mother.

There were no other eyewitnesses to the accident, but, as a matter of fact, there is, with the exceptions of the alleged improper parking of the ice truck and the rate of speed of the Ford car, little or no conflict in the testimony.

Defendants' case on the question of liability is based upon their contention that skidding may occur without fault or, as it is somewhat broadly stated by counsel, "the fact that an automobile skids is no evidence of negligence, because skidding may occur without fault and when it does occur, it may likewise continue without fault for a considerable space of time," and "the doctrine of res ipsa loquitur has no application." Monroe v. D'Aunoy (La.App.) 143 So. 716;

Siren v. Montague (La.App.) 142 So. 196; Smith v. Roueche (La.App.) 153 So. 487; Barret v. Caddo Transfer & Warehouse Company, 165 La. 1075, 116 So. 563, 58 A. L.R. 261.

A number of witnesses were presented by defendant; four in all qualified as expert automobile mechanics, each of whom testified that there was little or nothing that one could do to control the movement of an automobile which had started to skid, and three of whom expressed the opinion that providence alone could relieve the situation, or, as they put it, "Just trust to God that nothing possibly could happen," and "You are more or less at the Mercy of the Lord."

Dr. Rosenthal gave conflicting accounts of his use of the brakes on his car in connection with his efforts to stop after the skidding began. In his statement given to the police, at the time of the accident, he says that he literally stood on his brakes, while in his testimony he declares that he applied his brakes very gently and gradually. Much is made of this fact by counsel for plaintiffs, but we attach no particular importance to it, because it is evident from the expert testimony in the record, and we might say from our own observation and experience, that there is no standard method of procedure which may be relied upon to check skidding automobiles. It has been held a number of times that skidding is not of itself conclusive of negligence on the part of the operator of the automobile.

In Siren v. Montague, 142 So. 196, 198, this court pointed out that our Supreme Court in Barret v. Caddo Transfer & Warehouse Co., supra, held that skidding was not necessarily evidence of negligence, and exonerated the driver of a truck running about 8 or 10 miles per hour on a slippery pavement who skidded when he attempted to turn into an alley and knocked down an iron post, causing damage to the building which it supported.

None of the authorities referred to, however, support the doctrine announced by counsel to the effect that skidding "is no evidence" of negligence. Whether it is or not is dependent upon the circumstances obtaining in the individual case. In other words, an automobile which skids when it is being driven at a very moderate or slow speed and very carefully and cautiously cannot be said to have done so by reason of the negligence of its driver, but it is obvious that skidding may be due to careless or reckless driving or to excessive speed under certain conditions.

653

In Huddy's Cyclopedia of Automobile Law, vol. 3–4, p. 122, § 68, we read: "The skidding of an automobile may, however, clearly be the result of the driver's negligence, * * *. Indeed, there may be cases where the skidding calls into operation the doctrine of res ipsa loquitur; but this is not true if the operator was without fault. The speed at which the skidding machine was moving is a material element in determining whether the operator was negligent, for skidding which is the result of excessive speed may justify a finding of negligence."

In Rockwell v. Standard Stamping Co., 210 Mo.App. 168, 241 S.W. 979, 982, it was said: "While there was no direct evidence as to what caused the automobile to skid, it appeared that it began skidding just as it turned the corner, and the jury were warranted in inferring that the cause of the skidding was the excessive speed at which the truck was driven as it turned into Ninth street, thereby establishing a causal connection between the negligent act in driving at an excessive speed and the injury to plaintiff."

In Bloom v. Allen, 61 Cal.App. 28, 214 P. 481, 482, is found the following: "It is urged by the respondents that the mere fact that the car skidded is not of itself evidence of negligence. Assuming this to be true, as above pointed out, there is other evidence tending to show that the skidding was caused through the negligent operation of the vehicle."

In the instant case Dr. Rosenthal saw the parked ice truck when, according to his own testimony, he was 150 feet away. He was in the slow zone, which was 16 feet wide. The truck, if it was parked at an angle as he claims, protruded 8½ feet, the truck being 5 feet wide, leaving 7½ feet of space between the 8-foot wide fast zone and the ice truck, a space which it would seem would be sufficient to permit of the passage of Dr. Rosenthal's automobile without encroaching upon the fast zone, but, assuming that the truck was directly in his path and that it was necessary for him to turn to the left and towards the neutral ground to clear the ice truck, it seems to us that that maneuver should have been undertaken before getting as close as 60 feet, particularly in view of the slippery pavement on which he was driving and, if the presence in either zone of vehicles interfered with such movement, at a more distant point he should have slowed down and, if necessary, stopped his car to prevent possible skidding in the vicinity of the parked ice truck, particular-

ly since he observed the presence of the ice man directly in its rear. But, aside from these circumstances, we are convinced that Dr. Rosenthal was driving much too fast under the prevailing conditions, and we base our conclusion in that respect very largely upon the condition of the ice truck after the impact. Leitz was standing on an oak step 31 inches long, 10 inches wide, and 1½ inches thick, depending from the rear of the ice truck, and supported by two iron bars 1¼ inches wide, 1 inch thick at the tip, and 2 inches thick at the back. The oak step was broken and splintered at one end and the iron bar supporting the step was bent under the chassis of the truck, and the part supporting the step, which was rectangular before the accident, was bent in the form of a circle. It is inconceivable that this result could have been accomplished by an automobile which was being driven at the moderate speed of 18 miles per hour, after having skidded for 60 feet. We are not prepared to say, even in the light of the expert opinion in the record, what causes an automobile to skid, but it is obvious that its velocity is largely due to the speed at which it was driven before it started to skid.

There is some evidence in the transcript concerning the condition of Dr. Rosenthal's eyes. He is 43 years of age, and his mother, who was driving with him at the time of the accident, is 69. It is admitted that the doctor suffers from retinitis, which is congenital. He says that with corrective eyeglasses his vision is normal. On the other hand, counsel for plaintiffs argue that the presence of his aged mother in his automobile in inclement weather is an indication of the doctor's defective vision; her presence being accounted for upon the ground that her normal vision is needed to supplement the doctor's deficiency in that respect. Dr. Rosenthal, however, explains the presence of his mother by saying that she suffers from organic heart disease and that she was with him on that day in conformity with his practice of taking her on all of his business errands in order that he might be present to administer to her in the event of any sudden crisis in her heart ailment requiring emergency treatment. The record does not indicate that Dr. Rosenthal is "half-blind," as zealous counsel contends, nor can we say that Mrs. Rosenthal's presence in the automobile was for the purpose of supplementing the doctor's eyesight. On the other hand, if Mrs. Rosenthal habitually accompanied her son in fair and foul weather in order to avail herself of his professional services in the event of a sudden car-

diac emergency, it would seem that the danger and the hazards of traffic in a modern city would be well calculated to produce such emergency. Certainly the effect of the accident resulting in the injury and subsequent death of Mr. Leitz must have been a severe trial to Mrs. Rosenthal. But, whether the doctor's eyes were good or bad, and whatever may have been the reason for his mother's presence, he was negligent in the operation of his automobile, and the death of the husband and father of the plaintiffs must be imputed to his wrongful act.

■ It would be difficult to say from the evidence whether the ice truck was parked at an angle or not, because its position after the accident appears inconsistent with that contention when the point of impact is considered, but, assuming that defendants are correct in this particular and that the ice truck was parked in violation of the section of the municipal ordinance relied upon, we believe that the manner in which the ice truck was parked had nothing to do with the accident. There was ample space between the truck and the neutral ground to permit a careful driver to avoid contact with the ice truck. The plea of contributory negligence is not well founded. Raziano v. Trauth, 15 La.App. 650, 131 So. 212.

■■ The quantum of damages is said by counsel for defendants to be excessive and by counsel for plaintiffs to be inadequate. Leitz suffered considerably between the time of his injury and his death. The inherited cause of action is therefore an important factor. There is some evidence, perhaps, amounting to proof that the deceased had arteriosclerosis, which prevented the ligatures used by the surgeon who amputated his leg from holding because of his brittle arteries. It is argued that this fact should be considered in mitigation of damages. We know of no rule or authority which sanctions such course. The fact that a man might have died from some disease with which he was afflicted sooner than a normal individual has never, so far as we are informed, been considered as a factor in assessing damages for his negligent killing.

In Shaffer v. Southern Bell Tel. & Tel. Co., 160 So. 439, 441, this court held that there was insufficient proof of a causal relation between Mrs. Shaffer's death and an automobile accident in which she was injured to permit recovery for her negligent killing based upon the accidental injury. In that case the death certificate which was in evidence gave the cause of death as:

"Chronic nephritis.

"Chronic myocarditis.

"Hypertension.

"Arterio Sclerosis.

"Contributory causes of importance not related to principal cause:

"Automobile accident 3 months ago probably contributory."

Our Supreme Court in reversing this court said (184 La. 158, 165 So. 651, 655):

"In Behan v. John B. Honor Co., 143 La. 348, at page 351, 78 So. 589, 590, L.R.A. 1918F, 862, this court said: 'But it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability.' Citing Hilliard v. Chicago City Railway Co., 163 Ill.App. 282; Larson v. Boston Elevated Railroad Co., 212 Mass. 262, 98 N.E. 1048.

"In Hooper v. Standard Life & Accident Ins. Co. 166 Mo.App. 209, 148 S.W. 116, it was held that: 'Where a man is so afflicted that he will die from such affliction within a very short time, yet if, by some accidental means, his death is caused sooner, it will be a death from "accident," within the meaning of the terms of an accident insurance policy.'

"There can be no doubt such is the law, because it has been adopted by practically every court which has had occasion to pass on the question. And it follows, of course, that if a pre-existing disease brought to a crisis by accident authorizes a recovery for personal injuries resulting from the accident it also authorizes a recovery from death resulting from the accident.

"Our conclusion is that the district court was correct in awarding plaintiff damages for the death of his wife and that the Court of Appeal erred in setting aside the award."

■ We believe the amount allowed by the jury of $15,000 and the judgment based thereon to be supported by previous awards in similar cases. Gray v. Foundation Co., 151 La. 7, 91 So. 527; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205; Lewis v. Texas & P. R. Co., 146 La. 227, 83 So. 535; Barber v. Louisiana Ry. & Nav. Co., 141 La. 1059, 76 So. 199, L.R.A. 1917F, 802.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.