# Southern Railway Co. *v.* Fisher.

### Injury to Servant.

(Decided December 21, 1916.   Rehearing denied February 15, 1917.
74 South. 580.)

1. **Master and Servant; Injuries to Servant; Federal Employers' Liability Act.**—Every common carrier by railroad while engaging in commerce between the states is liable in damages under Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657-8665]), to any person suffering injury while he is employed by such carrier in such commerce for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

2. **Negligence; Injuries to Servant; Federal Employers' Liability Act; Contributory Negligence.**—Under the Federal Employers' Liability Act, the fact that an employee was guilty of contributory negligence does not bar a recovery; its only effect being to diminish the damages awarded by the jury in proportion to the amount of negligence attributable to the employee.

3. **Master and Servant; Federal Employers' Liability Act; Assumption of Risk.**—The Federal Employers' Liability Act has not eliminated the defense of assumption of risk other than where the violation by the carrier ·of any statute enacted for the safety of employees contributed to the injury or death as provided therein.

4. **Master and Servant; Injuries to Servant; Federal Employers' Liability Act; Assumption of Risk.**—A switch engine conductor's contract of employment did not involve him in any general assumption of risk for the negligence of coemployees, for, otherwise, the provision of the Federal Employers' Liability Act that the employee may recover by showing that one of the co-operating causes of his injury was the negligent act or omission of a co-employee would be inoperative.

5. **Negligence; Federal Employers' Liability Act; Pleading; Contributory Negligence.**—Under the provision of the Federal Employers' Liability Act that contributory negligence is not a bar to an action thereunder, pleas of contributory negligence pleaded in bar of a railroad employee's action for injuries rather than in mitigation of damages were defective.

[Southern Railway Co. v. Fisher.]

6. **Damages; Evidence; Employers' Liability Act; Admissibility; Conclusions.**—In action for injuries under the Federal Employers' Liability Act, plaintiff's testimony that for many years he had been employed by defendant in the service he was performing at the time of his injury, that his injury had disabled him to further perform such service, and that he was at the time of the trial unable to perform any service requiring the constant use of his injured foot, was material to be considered in ascertaining the effect of plaintiff's injury upon his ability to earn a livelihood in the employment for which he was fitted by long experience and some degree of disability in other lines, and was not objectionable as conclusions.

7. **Evidence; Hearsay.**—In action for injuries, testimony of a witness, who went to the place of accident immediately after it happened, as to what three members of the crew operating the engine by which plaintiff was injurd said concerning the manner of the accident, however closly they followed upon the accident, was merely narrative of a then past transaction, was hearsay, and should have been excluded.

8. **Appeal and Error; Review; Harmless Error.**—In action for injuries under the Federal Employers' Liability Act, the admission of hearsay testimony as to statements made by three members of the crew operating the engine by which plaintiff was injured was harmless, where these men were witnesses and testified to the same effect substantially, and no light was thrown on the questions in controversy, and to the extent the hearsay evidence differed it was not offered in impeachment and was not objected to on the ground that no predicate was laid.

9. **Trial; Federal Employers' Liability Act; Instructions; Ignoring Evidence.**—In action for injuries under the Federal Employers' Liability Act, whatever may be the duty in general of employees while going about their work in a railroad yard to look and listen before going upon or crossing a track, special charges requested by defendant on that subject were refused without error because they ignored plaintiff's evidence tending to show that he had directed the crew that the engine should not be moved until a certain train had passed through the yard.

10. **Master and Servant; Injuries to Servant; Contributory Negligence.**—Where the conductor of a yard locomotive directed his crew not to move the engine until a special had passed, he had a right to assume that he would be obeyed, and so he might go upon the track without taking additional precaution against the movement of the engine until the appointed time.

11. **Master and Servant; Federal Employers' Liability Act; Instructions.**—Evidence that plaintiff had instructed the crew not to move the engine until a special train had passed justified the refusal of charges requested by defendant that defendant's employees, operating the engine at the moment, were under no duty to look out for plaintiff or give him warning of the engine's approach, since plaintiff's duties took him about the yard from one track to another, as the engine crew knew, and, if they would move the engine notwithstanding his direction to the contrary, it was clearly their duty to take precautions against the possible presence of plaintiff on the track over which they moved it.

12. **Trial; Federal Employers' Liability Act; Instructions.**—In a switch engine conductor's action for injuries under the Federal Employers' Liability Act in which it did not appear that the engineer operating the engine which injured plaintiff discovered the dangerous situation of plaintiff, an instruction, that under the issues and evidence of this case the plaintiff is not entitled to recover on account of any negligence of the engineer after he dis-

[Southern Railway Co. v. Fisher.]

covered the peril or dangerous situation of the plaintiff, should have been given.

13. **Appeal and Error; Trial; Review; Reversible Error; Instructions.**—Under the direct provisions of Code 1907, section 5364, as amended by Acts 1915, p. 815, in a switch engine conductor's action for injuries under the Federal Employers' Liability Act, error in refusing a requested charge on subsequent negligence was not reversible, where the jury was substantially and fairly instructd in a way to remove all apprehension that a verdict would be founded on subsequent negligence, and plaintiff was not proceeding on theory of subsequent negligence and withdrew all counts except one upon which such a finding could be predicated.

14. **Commerce; Railroads; "Interstate Commerce."**—Where a railroad was engaged in interstate traffic, and the division of its road upon which a switch engine conductor was employed extended through several states, and at the time of an injury to the conductor caused by the switch engine he was noting cars to be made up into trains for through traffic, at a time when no local freights were handled, such conductor was engaged in "interstate commerce."

(Anderson, C. J., dissents.)

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by E. A. Fisher against the Southern Railway Company for damages for injuries sustained while in its employ, brought under the Federal Employers Liability Act. Judgment for plaintiff and defendant appeals. Affirmed.

LAWRENCE E. BROWN and STOKELY, SCRIVNER & DOMINICK for appellant. BOULDIN & WIMBERLY for appellee.

SAYRE, J.—(1, 2) This action was brought by appellee under the federal Employers' Liability Act. The argument against the seventh count of the complaint is that it failed to show that defendant owed any duty to plaintiff. Since every common carrier by railroad while engaging in commerce between the states is made by the statute liable in damages to any person suffering injury while he is employed by such carrier in such commerce for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, defendant was liable in the case stated by the count.— *Southern Railway v. Peters*, 194 Ala. 94, 69 South. 611. Possibly the count leaves plaintiff's case open to the inference that he was guilty of contributory negligence, since, notwithstanding his duty to exercise reasonable care for his own safety, and notwithstanding it was his duty in general to direct the operations of the en-

gine, he was at a place where the engine would strike him as, for, anything alleged to the contrary, he would have known had he exercised due care; but under the federal statute that fact does not bar a recovery, its only effect being to diminish the damages awarded by the jury in proportion to the amount of negligence attributable to the employee, with some provisos of no consequence here. There was no error in overruling the demurrer to this count.

(3-5)' Congress has not eliminated the defense of assumption of risk in cases like that presented by counts 5 and 7 upon which this case went to the jury.—*Seaboard Air Line Ry. v. Horton*, 233 U. S. 502, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475. Considering special pleas, 8 H, I, Z—1, and Z—2 with reference to the facts alleged rather than their labeling by defendant, they were not pleas of assumption of risk, or, if so intended by defendant, they were plainly defective. Plaintiff's contract of employment did not involve him in any general assumption of risk from the negligence of coemployees, for, otherwise, the statute counted upon, and declaring, in effect, that an employee may recover on showing that one of the cooperating causes of his injury was a negligent act or omission of a co-employee, would be inoperative.—*Louisville & Nashville v. Fleming*, 194 Ala. 257, 69 South. 125. As pleas of contributory negligence, they were defective because pleaded in bar of the action rather than in mitigation of damages.

(6) There is no reversible error in allowing the plaintiff to testify that for many years he had been employed by defendant in the service he was performing at the time of his injury, that his injury had disabled him to further perform such service, and that he was at the time of the trial unable to perform any service requiring the constant use of his injured foot. The testimony as to all these facts was material to be considered in ascertaining the effect of plaintiff's injury upon his ability to earn a livelihood, in the employment for which he was fitted by long experience, and, it may be, some degree of disability in other lines, and were competently rendered by the witness; that is, none of them were objectionable as statements of mere conclusions. They were incapable of rendition in any other form.

(7, 8) The testimony of Woodin, a witness for plaintiff, was taken by deposition. He was close at hand and went to the place of the accident immediately after it happened. His testi-

mony as to what he then and there heard Sparks, Malone, and Clem, members of the crew operating the engine by which plaintiff was injured, say concerning the manner of the accident, was allowed to go to the jury over defendant's objection.   However closely the statements may have followed upon the accident, they were merely narrative of a then past transaction, were hearsay, and should have been excluded.   But the court is of opinion that the judgment should not be reversed on that account. Sparks, Malone, and Clem testified as witnesses for defendant. What Malone and Clem said to or in the hearing of Woodin after the accident was of no consequence.   It did not tend to contradict their testimony at the trial, nor did it throw any light upon the questions in controversy between the parties and about which the result of the case turned, viz., whether Sparks, who stood upon the forward footboard of the tender as the engine "backed" through the yard and whose duty it was, according to tendencies of plaintiff's evidence, to keep a lookout for employees upon the track, was negligent in that respect, or whether, after he discovered plaintiff's peril, he failed to exercise due care to have the engine stopped.   They said only that they did not see plaintiff, meaning, very clearly, that they did not see him leaving or after he left a place of safety on the track adjacent to that upon which the engine was moving.   What Sparks said was more material because it related to the immediate circumstances of plaintiff's injury ; but the judgment should not be reversed for the error in allowing Woodin to repeat it—this for the reason that it tended to support defendant's denial of negligence on the part of Sparks, while, if on mature reflection it may be said to differ somewhat from Sparks' testimony, the difference was so slight as hardly to amount to a contradiction.   The evidence does not appear to have been offered to impeach Sparks, nor was it objected to on the ground that no predicate had been laid.—*Southern Railway v. Smith,* 177 Ala. 367, 58 South. 429.

We are not of opinion that the exceptions to parts of the court's oral charge to the jury need to be treated seriatim.   Those parts to which exceptions were reserved, read in connection with their context, do not appear to involve error.

(9-11) Plaintiff was conductor of the switch engine that ran against him.   The crew operated the engine about the yard under his direction, breaking up trains as they came in, and making up trains to be taken out.   Whatever may be the duty in general

[Southern Railway Co. v. Fisher.]

of such employees while going about their work in a railroad yard to look and listen before going upon or crossing a track, special charges requested by defendant on that subject were refused without error because they ignored plaintiff's evidence going to show that he had directed the crew that the engine should not be moved until the Memphis special had passed through the yard. Defendant holds that plaintiff's direction to the engine crew meant only that they should not take the engine out upon the main line. Suffice it to say that the jury may have found, very reasonably under the evidence, that the direction was given and understood in accordance with plaintiff's contention, in which event plaintiff had a right to assume that he would be obeyed, and so that he might go upon the track without taking additional precaution against the movement of the engine until the appointed time. Several of the charges requested by defendant predicated plaintiff's duty to look and listen for the engine without regard to—that is, notwithstanding—the duty of the crew not to move the engine. They were therefore refused without error. The evidence to which we have referred above was enough to justify also the refusal of charges by which defendant requested the court to say to the jury that defendant's employees, operating the engine at the moment, were under no duty to look out for plaintiff or give him warning of the engine's approach by ringing the bell or otherwise. Plaintiff's duties took him about the yard from one track to another, as the engine crew knew of course, and, if they would move the engine notwithstanding his direction to the contrary, it was clearly their duty to take precautions against the possible presence of plaintiff on the track over which they moved it. Besides, there was other evidence tending to show that it was the duty of the crew generally to look out for plaintiff, and that especially was this the duty of Sparks whose place on the forward footboard of the tender was one of peculiar advantage for that purpose. These tendencies of the evidence were ignored in the charges refused.

(12, 13) It seems likely that the court refused charge 17, requested by defendant, through inadvertence; or it may be that it was considered abstract, since there was no evidence to support a charge of negligence against the engineer Clem after the actual discovery of plaintiff's danger, in which last event it would have been better to give the charge as requested, for a good deal was said in the testimony concerning Clem's operation of

[Southern Railway Co. v. Fisher.]

the engine and in a proper state of the evidence a finding of subsequent negligence on his part might have been referred to count 7 in which negligence was charged generally against "the agents or employees of the defendant engaged in operating said engine." But, for whatever reason the court marked the charge "refused," a reversal cannot be based upon its refusal, for the court very explicitly instructed the jury in its general charge that there could be no recovery for any subsequent negligence of Clem, and at defendant's request gave the affirmative charge in writing against count 1 which specifically charged Clem with negligence after he discovered plaintiff's presence and peril at the place where he was injured, and upon the whole record it is quite clear that the case turned upon the charge of negligence preferred against Sparks. Thus it was that the jury was substantially and fairly instructed in a way to remove all apprehension that a verdict would be founded upon any alleged subsequent negligence of Clem. Section 5364 of the Code as amended by the Act of September 25, 1915 (Acts, p. 815).

(14) Other special charges refused to defendant need not be specially noticed, except to say that the general affirmative charge on the whole case was properly refused. This charge proceeded upon the idea that plaintiff was not engaged in interstate commerce at the time of his injury. Defendant was engaged in interstate traffic, and the division of its road upon which plaintiff was employed extended from Chattanooga in Tennessee, through Georgia and Alabama, to Memphis, Tenn. Trains that came into the yard consisted of cars passing from one state to another, and, according to plaintiff's testimony, he was walking through the yard noting cars to be made up into trains for through traffic. On that day, Sunday, no local freights were handled. This testimony warranted the jury in finding that plaintiff was engaged in interstate commerce.

The damages awarded were ample; we cannot say they were excessive.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.

### ON REHEARING.

SAYRE, J.—On appellant's application for rehearing this case went to the full bench, whereupon the court upon due consideration directed the following statement and conclusion:

On appellant's brief on its application for rehearing it is urged with great and renewed vigor that the judgment in this case should be reversed for the trial court's error in refusing appellant's requested charge No. 17 which reads as follows: "The court charges the jury that under the issues and evidence of this case the plaintiff is not entitled to recover on account of any negligence of the engineer Clem after he discovered the peril or dangerous situation of the plaintiff on the occasion complained of."

After a careful re-examination of the evidence, we are still unable to find any justification for the theory that the engineer discovered the peril or dangerous situation of the plaintiff on the occasion complained of. It follows hence that the charge might have been given with perfect propriety and that its refusal constituted error for which the judgment should be reversed, unless it appears upon the whole record that defendant had in another way the benefit, substantially, of the proposition of the instruction refused.

In our original opinion we stated that the court at defendant's request had given the affirmative charge in writing against count 1 which specifically charged Clem with negligence after he discovered plaintiff's presence and peril at the place where he was injured. In the brief it is now suggested that the charge as to count 1 was given for the reason that it was drawn under the Employers' Liability Act of this state. That may have been the reason; but, considering that the answer to the question whether plaintiff and defendant were engaged in interstate commerce rested in inference to be drawn by the jury, the cogency of the reason is not quite clear. But we are not so much concerned about the court's reasons as we are about the effect of the record. The bill of exceptions shows that the court in its general statement and oral charge to the jury, after stating the effect of counts 3 and 7, said to the jury: "The other count, gentlemen of the jury, by number I believe is 4. The plaintiff makes the same charges I have suggested to you about the negligence of Mr. Clem who, he says, had charge of the engine in the switch yard at Loyal, and his negligence consisted in this: That Clem discovered that the plaintiff Mr. Fisher was in dangerous proximity to the track he was running the engine on and likely to be injured unless something was done to prevent it, and that after the discovery of that peril he failed to give a signal, a warn-

ing, or failed to stop, his engine, and as a result of that he was injured."

At one place in the record, after what purports to be the court's oral charge to the jury which at that place, we take it, is set out in compliance with the remedial act of September 25, 1915, requiring that every general charge shall be in writing or taken down by the court reporter as it is delivered to the jury and set out in the transcript on appeal, though this case was tried on September 8, 1915—and this must have been after the court had stated the meaning of count 4 to the jury—that appears:

"Before the court completed his charge, the plaintiff's counsel asked leave to withdraw all the counts. of the complaint except counts Nos. 5 and 7. Thereupon the court instructed the jury as follows: 'Now the plaintiff has the right at any time to withdraw any of these counts, and those that were left in'— before that the court had given the affirmative charge against counts 1 and 2—'have been withdrawn until we have only counts 5 and 7, and these are the only ones you will consider.' "

The bill of exceptions contains an identical account of what happened, as stated above, but this in addition: "At the conclusion of the court's oral charge, in open court, and in the presence of the jury and before it retired, plaintiff's counsel withdrew all the counts of his complaint except counts 5 and 7, stating to the court that all the issues charged in the counts withdrawn were embraced in these two counts."

The process set forth above eliminated not only counts 1 and 2, to which we have referred, but counts 3 and 4, in both of which plaintiff's injury was ascribed to the negligence of Clem and in the last named, or numbered, in which it was alleged that, "Clem discovered plaintiff's peril in time to avoid injuring him by giving signals of warning and stopping said switch engine, one or both, and negligently failed to give warning signals or to stop said engine," thus stating the only conceivable form of subsequent negligence that might have been attributed to Clem in the circumstances. In the fifth count plaintiff counted upon the negligence of Sparks after discovering plaintiff's peril, while count 7 contained only the general charge that: "The agents or employees of the defendant, engaged in operating said engine, negligently propelled the same against the person of the plaintiff, inflicting great personal injury."

It is true that under our decisions it was possible for the jury to return a verdict against defendant under count 7 on a finding that any agent of defendant, engaged in operating the engine, after discovering plaintiff's peril, negligently failed to take proper precautions against the danger of the situation thus brought to his knowledge, and that, on this showing, nothing else appearing, a reversal would be ordered for the error in refusing the charge numbered 17. But on the record here shown we think it appears with reasonable certainty, notwithstanding the statement of plaintiff's counsel to the effect that "all the issues charged in the counts withdrawn were embraced" in counts 5 and 7, that neither the court nor the jury understood that the case was submitted on the charge of subsequent negligence against Clem, but rather that they understood that, practically, the case was given to the jury on the issue whether plaintiff's injury had been caused by the negligence, initial or subsequent, of Sparks, as it should have been under the evidence. Nor, in view of these circumstances tending to exclude the conclusion, do we find it necessary to indulge the conclusion that perchance the jury may have erroneously based their verdict upon a state of supposed facts that was without warrant in the evidence. In these peculiar circumstances, common sense rebels against the idea that the court's refusal of charge 17 should necessitate a reversal. Certainly the court would proceed upon a highly technical ground, having no support in the meritorious issues litigated, to adjudge a reversal of this judgment because the general count No. 7 had the legal content of a charge of subsequent negligence against Clem when, as matter of fact, it appears that plaintiff was insisting upon a different ground that had support in the pleadings and the evidence, and this conclusion is not affected by the fact that a statement, capable of, though not necessarily requiring, a different interpretation, is attributed by the bill of exceptions to counsel for plaintiff, nor by the fact that counsel have here made a futile effort to sustain the proposition that there was evidence of Clem's negligence subsequent to a discovery of plaintiff's dangerous movement towards defendant's track. So far as we are advised, we have no case holding that a reversal must be ordered in such circumstances, and we think that the case here falls within the remedial purpose of section 5364 of the Code as amended by the act of September 25, 1915.

[Louisville & Nashville R. R. Co., et al. v. Mauter.)]

As to the ruling on the exception reserved to the admission of the testimony of the witness Woodin: The court is of opinion that this witness' testimony as to what Sparks said shortly after the accident, taken in a natural and unstrained way, tended to support Sparks' testimony at the trial and so, as far as it went, defendant's version of the accident. Therefore the court holds it to be quite clear that the admission of this evidence worked no harm to appellant and that no reversal should be predicated upon it.

Application overruled.

All the Justices concur, except ANDERSON, C. J., who dissents on the point raised by the refusal of defendant's charge No. 17.