(129 · So. 60)

## MOBILE & O. R. CO. v. WILLIAMS.
### I Div. 577.

Supreme Court of Alabama.
May 22, 1930.

Rehearing Denied June 19, 1930.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellant.

Harry T. Smith & Caffey, of Mobile, for appellee.

FOSTER, J.

This is the third appeal in this case. On the first, error was confessed. The second is reported in 219 Ala. 238, 121 So. 722. The facts shown in the report of the last appeal are in substance shown on this and additional evidence referred to in this opinion.

■ On this appeal, as on that, appellant's counsel press their contention that the proof does not justify an inference of negligence proximately causing the death of intestate, but only a conjecture to that effect. Of course if a conjecture is the only proper result of the evidence, it is not sufficient to justify an inference of negligence. This court fully appreciates that claim, and has clearly so stated it, and analyzed the distinction. Southern Ry. Co. v. Dickson, 211 Ala. 481, 486, 100 So. 665. The only difficulty in any such case is to determine whether the facts afford a reasonable inference or a mere conjecture.

The accident involved in this case occurred in full daylight. There were ten cars in the movement which resulted in the disaster. The blood stains and position of the mutilated body were such as to show that it occurred on the west rail, by a gondola, which was the third from the south end toward which direction the movement began. The evidence shows that deceased had been checking the cars in his book, and his book shows he had not checked the three gondolas and had inserted the seal numbers of only one of the box cars at the south end. Holder, the switchman at the south end, walked down on the west side to that end and around it and up on the east side inspecting the couplings and for obstructions, and to see that everything was right. He looked underneath the cars and between them. Appellant's counsel in brief call attention to figures from which they argue that "it can be determined with mathematical certainty, that there was very little, if any, ground space between the rails that was not within his view." McKenna, the yardmaster, had control of the cars and received from Holder the forward signal and relayed it. He was on the ground west of the cars, and says he "had a pretty good view of the whole cut of cars. It was, I suppose,

eight or ten feet of that south end that I could not see. * * * I could see under the cars, everything except what the wheels and journals kept me from seeing." He says he could see the legs of Holder on the other side of the cars as he walked along by them. So that between the two, the inference is they could see completely under and between the cars, and before and behind the couplings and journals, and that they did look, carefully, and did not see deceased at or near the cars or elsewhere at the time. McKenna boarded the engine as it moved off. The movement, apparently, as it started, caught deceased under the wheels of the third to the last car. We do not think it mere conjecture to say that when the cars started deceased was in a dangerous position; that he was engaged in his duty of checking the cars; that Holder and McKenna either did not look as they claim they did, or else they could or should have seen such dangerous position. Southern R. Co. v. Shelton, 136 Ala. 215, 34 So. 194; Shirley v. So. Ry. Co., 198 Ala. 102, 73 So. 430.

There was testimony by witnesses Potter and Kostmyer that in checking box cars the engine foreman (decedent here) would go down one side and up the other, but, if there should be some open cars, he crawled over the top or between them, generally over the top. It is not necessary to check gondolas on both sides, but it was necessary to check sealed box cars to examine and record their seals. The book showed the cars checked, except the gondolas, and except the seals on the box cars were not all recorded. The numbers of all cars are on both sides, so that to make a record in the book of the car number only one side of the car need be seen. But the seals are on both sides of the box cars. His duty required an inspection of both sides of such cars. In doing so, these witnesses said that a crossing is usually over or between the open cars if there are any. It was at such a point that decedent was killed. He may have been negligent in doing so, but do the circumstances justify an inference that this is what he was doing?

There was evidence also that the air couplings on this cut were not connected; that it was the duty of decedent to "help out with coupling the air hose," that in movements of this kind the cars "generally have the air hose all coupled up." There was dispute as to both the latter statements. But the jury could of course accept that theory.

From this whole situation, the jury could find that decedent was crossing under or over the cars, in completing the inspection and checking the box cars, or in an effort to make the air couplings, and that Holder or McKenna could have seen him by the inspection they made before the movement began. There was also a tendency of the evidence to show that the movement should not have begun until deceased had completed his checking.

If the yardmaster, McKenna, who then had control of the train, knew that the duty of decedent was to check the cars, and perhaps aid in coupling the air, and that in doing so it was not unusual to be in a dangerous position if the cars moved, in that he might be crossing to check the seals on both sides, it was his duty not to start the movement until due care had been observed to see that decedent was not so engaged. Reasonable care requires conduct commensurate with the danger to be reasonably apprehended. Louisville & N. R. R. Co. v. Young, 168 Ala. 551, 53 So. 213; Louisville & N. R. R. Co. v. Davis, 91 Ala. 487, 8 So. 552; 39 C. J. 456–458. He should exercise due care to avoid injurious consequences to an employee who, in the discharge of his duties, is likely to be in a dangerous place, if this was known to his superior. 39 C. J. 458, 469.

The superior knew the duty of decedent to check the cars, and perhaps his custom to aid in making air couplings, and that such duties required him to go up and down on either side of the box cars, but only on one side of the open cars, and, not seeing him, the jury could infer that he should have apprehended that decedent may be so engaged, and, in doing so, may be crossing the tracks, or be under one of the cars—so that it was for the jury to say whether the facts were such as to require due care to see that decedent was not in a place of danger, or, if so, not to give the forward signal without warning him.

Counsel argue that such is not a fair inference, but a mere conjecture, because decedent "could just as well have boarded or attempted to board one of the cars after they had been started in motion, and then have fallen underneath or between them." But there had been a careful inspection they say before the movement began, and he was not seen, and as it began Holder was on top of the south end looking north, Stewart on top of the north end looking south, the engineer on the west side of the engine looking south, McKenna was on the ground west of the cars, and looking over the whole situation. None of them admit seeing decedent attempt to board the car, or doing anything else. But he was necessarily right at hand somewhere. We think the jury could find that some phase of the evidence dispels this conjecture counsel make. His injury and death, in connection with the evidence to which we have referred, show facts sufficient to go to the jury to draw an inference, if they see fit, that he was in an imminently dangerous position, and that this could have been apprehended, and that some of them could have or did see him, and that due care was not observed for

his safety. It is not necessary to conclude that they willfully caused the cars to run over him after observing his danger. They could have carelessly assumed he would get out of danger in due time if they saw him at all.

In none of the cases cited by counsel did there appear circumstances from which there might have been an apprehension of danger, which was sufficient to stimulate an examination to that end. Neither was there evidence whose effect, if given due credit, may have eliminated every mere conjecture suggested as the possible solution. In those cases there was nothing but conjecture. In this, some phase of the evidence, if believed, had a tendency to eliminate all plausible theories, except that decedent in the discharge of his duties was in a dangerous position, which should have been apprehended, and that there was thereby stimulated a duty of due care to see and protect him, and then comes the question of whether that was done. We do not mean to say that any of such matters were satisfactorily proven, but only that the evidence was such as to make them jury questions.

We cannot agree that there was error in refusing the general affirmative charge for appellant.

■ On former appeal we said that the court did not err in charging the jury that, before giving an order to move cars, due care should be observed to see and know that no persons engaged in the movement are in a position of danger. In making that statement, it was assumed, but it should have been stated, that, before such duty is stimulated, there must be a reasonable apprehension that some person so engaged in the movement is likely to be in a dangerous position, either from the customary manner of performing his duties, or because his duties require him to assume such a position. 39 C. J. 458, 462, 469; Southern Ry. Co. v. Fisher, 199 Ala. 377, 74 So. 580; Southern Ry. Co. v. Carter, 164 Ala. 103, 51 So. 147; Evansville, etc., R. R. Co. v. Lipking, 183 Ind. 572, 109 N. E. 47; Hunsaker v. Ashland Coal, etc., R. R. Co., 181 Ky. 598, 205 S. W. 612; Chesapeake & O. Ry. Co. v. Mihas, 280 U. S. 102, 50 S. Ct. 42, 74 L. Ed. 207; Toledo, St. L. & W. R. R. Co. v. Allen, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513.

Count 3 of the complaint, therefore, which refers to the duty to use due care in this respect, should also refer to the circumstances which are necessary to require the observance of such care, though, as written, it may have been justified by what was said on former appeal. The rule should have been more clearly stated at that time. The sufficiency of count 3 is not urged on this appeal, and we would not therefore reverse on its account. But the statement we made on former appeal on which it is predicated, is challenged, and we wish to clear up any misconception from what was there said. With count 3 in the case, charge 24 was probably within the issue as there stated. With such issue properly stated, the charge should refer to the circumstances which stimulate the duty, such as the count of the complaint must do.

■ The fifth and eighth counts of the complaint do not, in our judgment, show the breach of a duty to plaintiff. Along with other formal statements, their effect is that decedent was in such position as that he would be run over by a movement of the cars, and was run over as a proximate result of the negligence of defendant, etc., in causing the cars to start in motion with knowledge that the air brakes had not been coupled, or should have known it, and the further knowledge that some other employee (not decedent) was likely to be under said cars for the purpose of coupling said air brakes, upon the faith that they would not be moved until the brakes were coupled.

■ An employee can only claim damages for breach of a duty due him, not due some other person. The breach of duty here charged was to that other alleged employee who was likely to be under the cars to couple the air brakes, not decedent who is not alleged as likely to be there for that or any other purpose. It does not alleged that decedent was there for the purpose of coupling the air, or that he was likely to be there for that purpose. If he was there for some other purpose, he cannot claim damages for a breach of duty due another employee. The United States Supreme Court has fully recognized and applied this principle. The following is taken from the case of Chesapeake & O. Ry. Co. v. Mihas, 280 U. S. 102, 50 S. Ct. 42, 43, 74 L. Ed. 207:

"*If there was a violation of duty*, therefore, on the part of the railway company, *it was not of a duty owing to Mihas; and the rule is well established* that it is not sufficient for a complainant to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to the complainant. In Chesapeake & Ohio Ry. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, the facts were that a section foreman whose employment obliged him to go over and examine the track was on a tour of inspection. For that purpose he used a velocipede fitted to the rails. He was overtaken by a train and killed. The negligence charged was that the engineer and fireman of the train were not on the lookout; and the proof was to that effect. It was held that that duty was one which the railroad company might owe to others but not toward the class of employees to which the deceased belonged; and a recovery for his death was

reversed. In O'Donnell v. Providence & Worcester Railroad Co., 6 R. I. 211, it was held that a statute giving a right of action to one injured by the neglect of the railroad company to ring the locomotive bell before making a highway crossing was designed exclusively for the benefit of persons crossing the highway, and one injured while walking along the track not at a crossing could not recover under the statute. The court said (page 214 of 6 R. I.):

" 'If the defendants have violated any duty owing from them to the plaintiff, and by means or in consequence of that violation the plaintiff has suffered injury, he has a right to compensation and damages at the hands of the defendants for such injury. In the language of the books, an action lies against him who neglects to do that which by law he ought to do, (1 Vent. 265; 1 Salk. 335) and that, whether the duty be one existing at common law, or be one imposed by statute. In order, however, to a recovery it is not sufficient that some duty or obligation should have been neglected by the defendants, but it must 'have been a neglect of some duty or obligation to him who claims damages for the neglect. In 1 Comyns' Digest, Action upon Statute, F, it is said, "In every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of the wrong done to him contrary to said law," confining the remedy to such things as are enacted for the benefit of the person suing.' "

■ The court in the oral charge instructed the jury respecting the duty of railroads under the Federal Safety Appliance Act (45 USCA § 1 et seq.) to couple the air brakes, and that a failure to couple them under circumstances to which the act applied was negligence as a matter of law.

There is no count in the complaint which alleges that the death of decedent was proximately caused by a failure to couple the air brakes as required by law. Whether the violation of such duty is negligence was therefore not an issue in the case, and should not have been emphasized by calling the attention of the jury to it. We think that by so charging the jury they were misled to the prejudice of appellant. Allen v. Birmingham So. Ry. Co., 210 Ala. 41, 97 So. 93; Boyette v. Bradley, 211 Ala. 370, 100 So. 647.

The court refused charge numbered 40, but gave charge 32. The latter charge was the same as that numbered 25 on former appeal, and number 40 the same as 32 on that appeal. We said on that appeal that the court should have given them. We think that the benefit of charge 40 was obtained in giving charge 32.

Over the objection of appellant, the court permitted appellee to show the earning capacity of money in Mobile on March 2, 1926, in the hands of a person without education and training. The objection, besides general grounds, was because it is based upon a want of education and training in such matter, and because it calls for evidence of condition on March 2, 1926, rather than on the date of trial.

■ It is said in the case of Chesapeake & O. R. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 633, 60 L. Ed. 1117, L. R. A. 1917F, 367, that the proper measure of damages in cases under the federal act must be settled according to general principles of law as administered in the federal courts, and in that case the measure of damages and its method of computation are stated. The damages must compensate for the deprivation of the reasonable prospective pecuniary benefits which would have resulted from the continued life of decedent.

■ It must therefore be made up by taking account of the earning power of money. That there must be done what a reasonable man would do under the circumstances to reduce the amount of the damages, by putting the money at interest. The earning value of money in the hands of a reasonable man must control; not one who is so sagacious as to earn enormous returns, nor yet one so ignorant as not to be able to earn its real value in the hands of an average man. The standard of damages cannot be fixed or affected by the fortuitous condition of intelligence of some or all the beneficiaries.

In this case some of the dependents are minors. The court could not assume that their guardian would also be ignorant and incompetent. The authorities nowhere suggest that such test of capacity on the part of the dependents is material. The only material inquiry in that connection is the earning capacity of money in that locality in the hands of an average person. Jones v. Kansas C. S. Ry. Co., 143 La. 307, 78 So. 568.

■ The next inquiry is whether it is the earning capacity of money on the date of the death of decedent, or of the judgment. In this connection we think the following observations are pertinent. The amount equal to the anticipated benefits between the date of his death and of the judgment should be included in the verdict, for there could be no calculation of their cash value on an annuity basis. The whole amount should be included. Their due date has then passed. Alabama Min. R. R. Co. v. Jones, 114 Ala. 520 [8], 21 So. 507, 62 Am. St. Rep. 121. It is only for those which are to fall due after the judgment that deductions on an annuity basis is appropriate. The judgment should therefore be for an amount equal to the pecuniary benefits for the period between the death of decedent and the date of the judgment, and in addition an amount equal to such benefits in the future

with proper deductions for interest because they are received in advance of the date when they would have been had decedent lived. The whole theory of the principle of making deductions is that, when the dependents get the lump sum, it may be put at interest at the earning capacity of money, and, with the annual interest and a portion of the principal, the fund will be exhausted at the end of the expected life of decedent. But, prior to the date on which a judgment for the money is rendered, there is no occasion for anticipating future benefits. It is our judgment therefore that the inquiry as to the earning capacity of money is referable to the date of the trial, and that such inquiry relates to the amounts which may be ascertained as would have been thereafter payable.

We have referred to the fact that state courts are controlled by the federal Supreme Court in the interpretation of the Federal Employers' Liability Act (45 USCA §§ 51–59) in all respects, including its meaning as to the proper rule for measuring the award of damages. We have stated the substance of the rule it has adopted. Nowhere does the court refer to taxes in connection with the question. No court in any state, so far as we can learn, has done so. We do not feel justified in blasting a way on the subject, as we are bound only to follow the way laid out by the federal courts. We feel on this subject the same doctrine should control us as that followed in respect to interest prior to judgment, to which we referred on former appeal. We are therefore constrained to hold, until the federal Supreme Court asserts a different rule, that the tax rate is immaterial.

In the Kelly Case, supra, the opinion quotes from another United States Supreme Court case, referring to the annuity tables. It is said, "In order to assist the jury in making such an estimate, standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, are competent evidence. But it has never been held that the rules to be derived * * * from such tables or computations must be the absolute guides of the judgment and the conscience of the jury." Therefore any competent evidence which will show that a person is not likely to live as long as the average man of his age should be proper and material. If he is afflicted with some organic disease likely to cut short his life, that would be material.

It has also been held that the life expectancy of locomotive engineers may be shown by the evidence to be eight years less than the average man, as adopted by insurance experts. The amount of their salary is supposed to add compensation to the increase in risk. Jones v. Kansas C. S. Ry. Co., 143 La. 307, 78 So. 568; 45 USCA p. 350. The same rule was by the same court applied to a rail-way construction foreman. Simmons v. La. Ry. & N. Co., 153 La. 405, 96 So. 12. It has been said by this court that as a basis for the proper measurement of damages "evidence of the age, probable duration of life, habits of industry, means, earnings, health, skill, intelligence, and character of the deceased, his reasonable future expectations, and other like facts, were admissible." Louisville & N. R. R. Co. v. Fleming, 194 Ala. 51, 58, 69 So. 125, 128; 2 Roberts Fed. Liability of Carriers, § 902.

It is our judgment, therefore, that defendant should have been permitted to show that the life expectancy of one engaged in the business in which decedent was employed was less than the average. Charge 21, assignment 35, should have been given on the same theory.

The court fixed the amount of future benefits at the definite sums to be ascertained by the jury as the amount of contributions made in his life to his beneficiaries. The authorities do not make that the binding and fixed method of determining the future benefits. It is only for such benefits as may reasonably have been expected in the future, had he continued to live; what had been contributed by him in life is only a guide, but not a figure which must be taken as absolute. Likewise the tables must only be so taken, as said in the Kelly Case. The court should not charge the jury that they must use as an absolute guide the past contributions (2 Roberts Fed. Liab. Car. § 917 et seq.), but only that they are material evidence as to what the pecuniary benefits might have been. The oral charge, which is the basis of the nineteenth assignment, we think violates this as well as other principles we have discussed. Michigan Cent. R. R. Co. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417.

The rule seems also to be affirmed by the United States Supreme Court that the jury may apportion the amount of the damages between the dependents, but that a verdict which does not do so should not be arrested on that ground, when the defendant did not ask the court to instruct the jury to apportion it. Cent. V. R. Co. v. White, 238 U. S. 507, 35 S. Ct. 865, 869, 59 L. Ed. 1433, Ann. Cas. 1916B, 252, limiting the case of Gulf, etc., R. Co. v. McGinnis, 228 U. S. 176, 33 S. Ct. 426, 57 L. Ed. 787; 45 USCA p. 367; 2 Roberts Fed. Liab. of Carriers § 931. Appellant made no such request in this case.

The English statute from which the federal act was taken required the jury to apportion. The federal act leaves this out. The damages are for the dependents separately. But, even in states where the jury is required to apportion the damages, it is held to be of no concern to the defendant. On that subject it is said in the Central Vermont R. Co. Case, supra, "certainly not unless the de-

fendant can show that it has been injured by such failure." In the McGinnis Case, supra, the jury apportioned the award, which was proper, but it appeared that one of them who was allowed a portion was not entitled to anything. It seems from these cases that the jury may or may not apportion the damages; and in either event the defendant, in order to complain, must show that he is injured in some respect. Appellant has not undertaken to show this, and therefore the given charge No. 1 is not reversible error.

██ Under the federal act it is not necessary to plead contributory negligence. It is not a defense to the action, but it only mitigates the damages. This is the rule of pleading both in federal and Alabama courts. Kansas C. R. Co. v. Jones, 241 U. S. 181, 36 S. Ct. 513, 60 L. Ed. 943; Louisville & N. R. R. Co. v. Wright, 202 Ala. 255, 80 So. 93; People's Shoe Co. v. Skally, 196 Ala. 349, 71 So. 719.

██ Charge 38 refused appellant undertook to state to the jury the rule of contributory negligence in mitigation of damages in a case of this nature.

It instructs the jury that if they are reasonably satisfied from the evidence that decedent was guilty of contributory negligence, etc., they should reduce the amount of their award by what they find to be reasonable from the evidence considering such negligence. Whereas the act provides that the damages should thereby be reduced "in proportion to the amount of the negligence attributable to such employe." The requested charge did not state the rule with sufficient precision to guide the jury pursuant to the statute. The matter was left to the discretion of the jury, and they were not thereby instructed that it must be in proportion to the negligence of decedent. 2 Roberts Fed. Liab. of Carriers, §§ 857, et seq. The charge was therefore properly refused.

While it is true that contributory negligence has no place where death was the proximate result of a violation of the safety appliance act (2 Roberts Fed. Liab. of Carriers § 862; 45 USCA § 53), we have shown that in this case there was no effort to allege or prove that such violation had that proximate result. Louisville & N. R. R. Co. v. Blankenship, 199 Ala. 521, 74 So. 960.

We have considered such questions shown by the assignments of error as are likely to arise on another trial, and do not deem it necessary to treat the others.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

██ We stated in the original opinion that, though the failure to couple the air brakes may be negligence per se, there was no count which attributed the death of deceased to such failure, and that therefore the court should not have charged the jury as to such failure. We had just shown that the only counts which related directly to that subject did not allege that there was a breach of duty to the decedent in this respect, which proximately caused his death. Our attention is called to counts 1 and 2, which do not allege the quo modo of the negligence in operating the cars. This is not necessary, and the counts are sufficient therefore to sustain any mature of negligent operation of the cars, including negligence in the failure to couple the air brakes, if such negligence proximately caused the death of plaintiff's intestate.

██ With more accuracy we should have stated, as we did on former appeal, in effect, that under no aspect of the evidence could the failure to couple the brakes have proximately caused the accident. Whether the air was coupled may have been a circumstance more or less material upon the inquiry of whether there was reasonable apprehension that decedent may be in a dangerous position in an effort to couple it, dependant upon other phases of the evidence. But the negligence involved in the failure to have the air coupled would not add materially to that inquiry, and a charge on such negligence would tend to lead the jury to a conclusion that it should affect their verdict. So that while the issues made by the pleading were broad enough to include such negligence, the evidence dispelled an inference that negligence in failure to couple the brakes proximately caused the accident.

██ We have not stated, or consciously intimated, in any opinion that a violation of the Safety Appliance Act may not proximately cause injury to one not engaged in coupling the air. But in order that such be the fact, there must be shown circumstances which are sufficient to justify an inference of duty to the injured employee; and when the duty to another employee only is specifically alleged in the pleading we cannot assume from such allegation that there is a duty to decedent, unless the facts are legally sufficient to support that assumption. No case has been cited or read by us taking a different view.

We are also reminded that in the opinion we stated that the court permitted appellee to show the earning capacity of money in Mobile on March 2, 1926, in the hands of a person without education and training; whereas the language of the question was "in the hands of a person without *special* education and training in that matter." Our treatment of that aspect of the question propounded to a witness is shown to be based upon an erroneous statement of it. We are inclined to the view that such criticism is just.

Through some oversight we misread the question so as to eliminate the word "special." We agree that the proper inquiry is the earning power of money in the hands of one not "specially" educated and trained in its use, but the inquiry does not embrace one without any education or training whatever in its use. We treated the question as though it referred to the latter class of people. A more careful study of it convinces us of our error in this respect. Counsel agree with us that our reasoning is correct, and we agree with them that our premise was erroneous. However, the other objection which we discussed serves to render the question an improper one. In this other respect we think that the objection was sufficient to show its impropriety.

We are persuaded that the discussion of the other questions treated by counsel in application for rehearing are sufficiently and correctly disposed of in the former opinion.

The application for rehearing must therefore be denied.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.