**HOLLIDAY**
v.
**PACIFIC ATLANTIC S. S. CO.**
No. 1582.

United States District Court
D. Delaware.
Oct. 29, 1953.

Henry A. Wise, Jr., Wilmington, Del., and Abraham E. Freedman, Philadelphia, Pa., for libellant.

William Prickett, Wilmington, Del., and Thomas E. Byrne, Jr., Philadelphia, Pa., for respondent.

RODNEY, District Judge.

This was a libel filed by the widow of Clinton Holliday as his administratrix under the provisions of the Jones Act.[1] There were no children. The action was based upon the death of Clinton Holliday allegedly attributable to the respondent.

The decedent died February 18, 1942. The libel was not filed until January 24, 1945. Discovery process and other causes prevented a hearing until November, 1947. This hearing was had and testimony taken upon the questions of:

(a) alleged negligence of the respondent or the unseaworthiness of the boat as the cause of the traumatic injury which resulted in the death of Holliday;

(b) negligence on the part of respondent in failing to provide reasonable medical care after such injury;

(c) damages recoverable by the libellant if the liability of the respondent was established.

Proceedings to reopen the case, further discovery process, and other matters prevented action by the court until 1951. For none of the delays, so far as it appears, has the court been responsible.

1. 46 U.S.C.A. § 688.

On July 9, 1951 the District Court made its findings and filed its opinion. 99 F.Supp. 173. It found that the charge of unseaworthiness had not been sustained. The District Court held that the respondent was not guilty of failing to provide reasonable medical care. No finding was, of course, made upon the adequate record as to the damages suffered by the libellant. On appeal the United States Court of Appeals for the Third Circuit, in Holliday v. Pacific Atlantic S. S. Co., 197 F.2d 610, 613, on the record as established in the District Court, sustained the finding of the District Court that the evidence did not show the negligence of the respondent or the unseaworthiness of the boat as the cause of the traumatic injury which resulted in death. The Court of Appeals, however, on the record before it and as established in the District Court, felt that the respondent was negligent in failing to provide reasonable and timely medical treatment and concluded that the libellant was entitled to judgment. The judgment of the District Court in favor of the respondent was vacated and the cause remanded with directions to determine the amount of libellant's damage and to enter judgment accordingly.

Thus the matter is in this court to obey the mandate of the Court of Appeals "to determine the amount of libellant's damage and to enter judgment accordingly." The libellant sought to reopen the case as to damages and to take testimony anew upon that subject. The respondent objected and contended that as the record as established would have been sufficient to assess damages if the original trial had resulted in a judgment for libellant, so damages, under the mandate, should be ascertained from that record.

As a matter of convenience to the then attending counsel and witnesses and subject to the objection of the respondent, the additional testimony was taken to be used or not used as the court should subsequently determine.

Two matters are thus presented:

A. In obedience to the mandate of the Court of Appeals to "determine the damages," should such damages be determined upon the record theretofore established or should the testimony be reopened and new evidence admitted?

B. The ascertainment of the damages after determination of the testimony upon which such ascertainment was to be had.

A. From the authorities certain general principles may be called governing the action of the lower court after a remand from an appellate court.[2]

It seems clear from all the authorities that the mandate from the reviewing court is to be strictly followed within the compass of the mandate. Where the mandate requires something to be done of a final nature, the action of the lower court may be in the manner of a ministerial act of compliance. Where the mandate remands the case to the lower court "with directions" to accomplish a certain act, but without indicating how such act shall be performed, there exists a large measure of discretion in the performance. As said in Sprague v. Ticonic Nat. Bank, 307 U. S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184, "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."

In the present case and without recognizing any right on the part of the libellant to have additional evidence taken but in the exercise of sound judicial discretion, I have concluded that the additional and supplemental testimony shall be admitted in connection with the testimony heretofore taken. This is largely because there has elapsed the period of over ten years from the time of the fatal occurrence and almost six years from the original trial.

B. Arrival at a just and fair amount of damages in the present case is not to

2. The authorities are in part collected in 2 R.C.L. p. 289; 13 Cyc.Pl. & Pr. p. 835; 4 C.J. p. 1220; 5 C.J.S. Appeal and Error, §§ 1965, 1973, pp. 1510, 1529; 3 Am.Jur. p. 736.

be had without many difficulties. So many imponderables are presented that the difficulties are increased.

Recovery is sought under the Jones Act.[3] Under that Act the personal representative of a seaman may recover for his death as a result of personal injury and statutes regulating the right of action for death in the case of railway employees are made applicable. We are thus remanded to the Federal Employers' Liability Act, 45 U.S.C.A § 51 et seq., relied on by the libellant.

The libellant claims two causes of action: (a) an action under 45 U.S.C.A. § 51; and (b) an action under 45 U.S.C.A. § 59. These will be considered in order.

■■ (a) Under 45 U.S.C.A. § 51 recovery may, in case of death, be had by the personal representative of the deceased for the "benefit" of the widow. It is too clear for discussion that under this section the amount of recovery is based upon and limited by the pecuniary loss sustained by the beneficiary under the section.[4] In Dow v. Carnegie-Illinois Steel Corp., 165 F.2d 777, 779, the Court of Appeals of this Circuit stated that the "benefit" as mentioned in the Act "is the amount which the jury finds the dead man would have given to his wife * * * had he lived." The earnings of the deceased, as such, are not of primary importance and are considered only as they bear upon the question of pecuniary assistance or contribution rendered by the deceased to the beneficiary.

■ The amount of pecuniary contribution of the deceased to his then wife and the consequent financial loss to his wife or widow must in turn be divided into two distinct periods. The first period would embrace the time from the death of the deceased to the time of the ascertainment of damages. This is the amount receivable at the present time and based upon the determination of payments from the death to the date of ascertainment of damages, and this would not be subject to the ascertainment of present worth of such sum. The second period would embrace the financial loss the widow would reasonably be expected to suffer in the future based upon reasonable expectancy of life. These losses have not yet occurred and payment now will be subject to further consideration.[5]

The deceased was a cook on the steamer Peter Kerr. At the time of his death his basic pay was $137.50 per month and he was entitled to the benefit of a wartime bonus of almost 100% from a period shortly after World War II started and until the bonus was discontinued by proper authority. The deceased had made an allotment of $65 per month to be paid to his then wife by the steamship authorities from the money due to him. The widow testified at the first trial that the deceased made other payments to her and that his total contributions (allotment and other payments) were not less than $100 per month. This was substantially all of the testimony at the first trial concerning the pecuniary contribution made by the decedent to the beneficiary. At the second trial the widow baldly stated that the deceased gave her 75% of his income. Using this as a basis and with no other evidence of increased pecuniary allotment or payments, the claim is made for 75% of all the greatly increased income from bonus, raise of wages and overtime which the deceased, it is claimed, would have enjoyed had he lived. For this I see no basis either in law or in fact. I am of the opinion that the proven payments should be adopted and the increased income arising from bonus, increased wages and overtime considered in arriving at the probable amount of payments that would have been made by the deceased had he lived. This I have done and, after considering the bonus, increased wages and overtime the deceased might have enjoyed had he lived, I have arrived at a

---

3. 46 U.S.C.A. § 688.

4. See cases collected in 45 U.S.C.A. § 51, note 877.

5. Mobile & O. R. Co. v. Williams, 221 Ala. 402, 129 So. 60, 66.

figure which represented the payments that the deceased may reasonably have been presumed to have made to or for his wife. This consideration of bonus, increased wages and overtime very considerably increased the proven amount of contributions.

■ I have in view of all the circumstances adopted the figure of $150 a month as the reasonable and probable amount in allotments or payments to be made to the widow from the date of death to the date of ascertainment of damages, viz., April 30, 1953, a period of 11 years, 2 months. This amount I have computed at $20,100. To this amount should be added the amount of damages for future support and to this I must give some attention.

■ The ascertainment of the amount of damages which will compensate the libellant for future loss of pecuniary benefits is beset with many difficulties. "The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased."[6]

The consideration of future pecuniary benefits which might reasonably be expected to have been received by the widow must necessarily include some thought of the reasonable expectancy of life of the deceased. For this reason mortality tables were introduced at both trials by the libellant. These tables differed materially as to their figures and, indeed, this difference was one of the factors influencing the court to admit the additional testimony so that the court would, in its consideration, have the benefit of all contentions and information.

■ Mortality and annuity tables are not fixed rules to be followed implicitly. An expectancy of life as shown by a mortality table is not a fixed multiplicand to be used with an amount of

support as a multiplier in order to definitely arrive at a gross amount of future support. As said in Thompson v. Camp, 6 Cir., 163 F.2d 396, 403, "Mortality and annuity tables are merely guides to assist the jury in reaching its verdict; they do not furnish rules which the jury is required to follow. The various factors which are present in any particular case making the tables less applicable than they otherwise would be, are also to be considered by the jury." See also Haidacker v. Central R. Co. of N. J., D.C., 52 F.Supp. 713, 715.

■ Among the factors to be considered, among others, in dealing with mortality tables is the possibility that the deceased would not be able to work at his usual occupation during all the remaining years of his life and up to the moment of termination of his life expectancy and the possibility that his earning power would decrease with advancing age. Indeed, some authorities cited by the defendant view "work expectancy" rather than "life expectancy" the proper basis.

The hazardous nature of the occupation, if any, is also to be considered. In the present case the deceased was a cook on a merchant vessel. War had just broken out and enemy submarines and bombers were taking a heavy toll of such vessels. The deceased, because of the nature of his occupation, was being paid a bonus of 100% of his normal pay, which seemingly was based upon its hazardous nature. The very boat, Peter Kerr, on which the deceased was working at the time of his death was itself reputedly subsequently bombed and lost.

That persons engaged in hazardous occupations do not necessarily enjoy the same expectancy of life as those engaged in non-hazardous duties seems clear. Indeed, some courts acted upon actuarial figures that life expectancy of a railroad engineer or brakeman was materially less than that of an ordinary person.[7]

6. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 631, 60 L. Ed. 1117.

7. Jones v. Kansas City So. Ry. Co., 143 La. 307, 78 So. 568; Mobile & O. R. Co. v. Williams, 221 Ala. 402, 129 So. 60, 67; Sibert v. Litchfield & M. Ry. Co., Mo.Sup., 159 S.W.2d 612, 618.

Mortality tables were introduced in both trials by the libellant showing the life expectancy of the deceased. There is high authority for the principle that the courts take judicial knowledge of standard mortality tables and their contents.[8] Several of these tables widely used in appropriate activities have been consulted.

 In view of all the circumstances I have concluded that the widow might reasonably have been expected to receive from her husband some benefits in the form of pecuniary payments for the period of 18 years from the date of his death. Whether these payments would have continued at the rate heretofore adopted or be subject to adjustment due to advancing age is problematical. Of this period of 18 years, 11 years and 2 months have already been considered to the date of trial, viz., April 30, 1953, leaving 6 years and 10 months for the computation of future losses.

 The amount to be awarded the libellant for future losses of pecuniary benefits is not, however, to be arrived at by the mere ascertainment of the monthly payments and the expectancy of life. The present value of the aggregate future payments must be ascertained and for this purpose annuity figures are utilized showing different interest calculations upon which such present value is ascertained. The cases vary from the adoption of 2% for extremely conservative estimates to the legal rate in the community in which the trial is had. The adoption of the reasonable rate should involve the personality of the party interested and his or her capacity and knowledge of business affairs to provide a reasonably safe investment. The libellant in the present case has not been shown to be unusually skilled in the financial or investment field

and, as to her, a reasonably safe percentage should be adopted. This percentage in view of all factors, incuding U. S. Government bonds of 3¼%, I have fixed at 4%.

Upon this basis the present value of the future losses would be $10,746.

A compilation of the foregoing figures, therefore, would show an award to the libellant for past and future losses under 45 U.S.C.A. § 51 of $30,846.

(b) The libellant seeks also a recovery of damages under 45 U.S.C.A. § 59. Insofar as applicable here this section provides that "any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow * * *."

 The libellant contends that under this section there is a right of action based on the economic value of the balance of the decedent's unexpired normal expectancy of life as well as a right of action for damages for the pain and suffering experienced by the deceased. The contention is made for the preservation of the record rather than an expectancy of its present adoption for the Court of Appeals of this Third Circuit in Hickman v. Taylor, 170 F.2d 327, determined precisely to the contrary and this is binding on me.

Insofar as the present case is concerned the recovery of damages under Sec. 59 is to be based upon the pain and suffering sustained by the deceased while he lived and which, by virtue of the section, survives to the present libellant. It is, of course, both useless and untimely to point out the somewhat unusual divergent purposes of the original act shown by Sec. 51, based as it is on the pecuniary loss of the beneficiary and Sec. 59 which concerns no measure at all of

8. City of Lincoln v. Power, 151 U.S. 436, 14 S.Ct. 387, 38 L.Ed. 224; Southern Pac. Co. v. De Valle Da Costa, 1 Cir., 190 F. 689; Commissioner of Internal Revenue v. Meyer, 6 Cir., 139 F.2d 256; Black v. United States, D.C., 74 F.Supp. 62; Chamberlayne, Ev., Sec. 859c; 1 Jones on Ev., 2d Ed., Sec. 453; Ann. Cas. 1914C, 685.

financial loss to the beneficiary. Such, however, is the law. There is something incongruous, however, in close relatives seeking to greatly increase their own financial profit by the enhancement or magnifying the pain and suffering sustained by the deceased unless, indeed, the damages might be considered in the nature of exemplary or punitive damages and there is no evidence whatever in this case to sustain such a theory. In this case the claim of the libellant for the pain and suffering of the deceased has been increased over threefold beyond that claimed at the first trial and upon precisely the same evidence.

This court and the Court of Appeals have held that the respondent was not guilty of any negligence in the cause of injury from which the decedent died. The liability of the respondent grows out of its failure to provide that measure of timely medical service that, under the circumstances, its duty required it to render. The Court of Appeals has indicated that some fifteen or more hours elapsed after this duty clearly arose. What portion of pain and suffering occurred after this duty arose is difficult to determine. The facts of pain and suffering are rather restricted. The accident seems to have happened on February 2 or February 3, 1942. The decedent was working on February 5 or 6. One witness testified without definite relation to time as to the very severe amount of pain suffered before the decedent was removed to the hospital on February 8, after which no testimony exists.

Even in the absence of any testimony as to pain and suffering I would feel constrained to find and to hold that very considerable pain and suffering did exist and for this a judgment must be given. I have awarded the sum of $1,500.

A compilation of all the amounts considered in this memorandum results in an award to the libellant of $32,346.

Costs are awarded to libellant.